Julio Vives Vázquez, demandante y recurrido, *v.* Estado Libre Asociado de Puerto Rico y otros, demandados y peticionarios; Néstor Gregory Carrasco y otros, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, demandado y peticionario; Rosalí Fernández Pola y otros, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, demandado y peticionario; Amado Morales Cosme y otros, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico et al., demandados y peticionarios.

*Números:* CE-93-600 *Resueltos:* 17 de diciembre de 1996
CE-93-341
CE-93-575
CE-93-698
CE-93-699

*Humberto Guzmán Rodríguez* y *Luis Manuel Rodríguez Ló-pez*, de *Fiddler, González & Rodríguez, Julio Nigaglioni Arrache*, de *Ledesma, Palou & Miranda, Fernando Pérez Colón*, de *Martínez, Odell & Calabria*, abogados de la

parte peticionaria; *José A. Rodríguez Jiménez, Janice M. Gutiérrez Lacourt, Judith Berkan, Julio Fontanet, Federico Lora, Félix Colón Morera, Charles Hey Maestre, Jessica Rodríguez Martin, Eduardo Villanueva Muñoz, Roberto Cardona Ubiñas, Lulio E. Saavedra González, Wilson Cortés Burgos, Juan I. Crespo Roldán* y *Julio Eduardo Torres*, abogados de la parte recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

# I

Ya anteriormente nos ha tocado en tres (3) ocasiones resolver controversias relacionadas con la práctica del Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) de "actualizar y preservar expedientes, carpetas, listas, ficheros, etc., de personas, agrupaciones y organizaciones, única y exclusivamente por creencias o tendencias políticas e ideológicas".[1] En *Noriega v. Gobernador*, 122 D.P.R. 650 (1988),[2] (en adelante *Noriega I*) resolvimos que dicha práctica era inconstitucional y, posteriormente, en *Noriega v. Gobernador*, 130 D.P.R. 919 (1992), (en adelante *Noriega II*) resolvimos que no se podía eliminar de los expedientes que fueran devueltos a las personas que los solicitaran los nombres de quienes de alguna forma proveyeron información a los agentes del orden público involucrados en la práctica declarada inconstitucional. Recientemente, en *Medina v. Cruz Manzano*, 141 D.P.R. 635 (1996), resolvimos que las personas que brindaron información al Estado para la confección de las carpetas no eran civilmente responsables, puesto que "la responsabilidad civil y la condena total debe recaer única y exclusivamente en el Estado". (Énfasis suprimido.) *Cf. Noriega II*, supra.

---

[1] *Noriega v. Gobernador*, 130 D.P.R. 919, 920 (1992). En los sucesivo nos referiremos a esta opinión como *Noriega II*.

[2] En lo sucesivo nos referiremos a esta opinión de *Noriega v. Gobernador*, 122 D.P.R. 650 (1988), como *Noriega I*.

En esta ocasión regresan a nuestra atención varios casos[3] para los que las decisiones emitidas en las opiniones relacionadas anteriormente sirven como punto de partida o de alguna otra forma demarcan su devenir. Hoy nos toca auscultar y analizar el alcance en nuestra jurisdicción de la disposición contenida en la Regla 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Mediante ésta, los tribunales pueden consolidar, total o parcialmente, casos pendientes ante sí que presentan cuestiones comunes de hecho o de derecho. Al resolver, no podemos olvidar que estamos "ante un caso constitucional e históricamente único, de singulares remedios, cuya trayectoria requ[iere] el más ponderado análisis judicial sobre la marcha". *Noriega II*, supra, pág. 932. También debemos tener presente que estamos ante un Tribunal de Primera Instancia de jurisdicción unificada, con amplia facultad para el manejo de los casos que se presentan ante su atención y que el Tribunal Supremo tiene facultad para, en bien de la justicia, ordenar la mejor utilización de los recursos disponibles del Sistema Judicial.

## II

Como corolario de nuestras decisiones en *Noriega I*, supra, y *Noriega II*, supra, se presentaron en las distintas salas del entonces Tribunal Superior varios casos civiles contra el E.L.A., entre otros demandados, en los que se reclamaba indemnización por los daños sufridos como con-

---

[3] Los casos ahora ante nuestra consideración son los siguientes: *Vives Vázquez v. E.L.A. y otros*, CE-93-341; *Gregory Carrasco y otros v. E.L.A.*, CE-93-575; *Fernández Pola y otros v. E.L.A.*, CE-93-600, y *Morales Cosme y otros v. E.L.A. y otros*, CE-93-698 y CE-93-699. El citado caso de *Gregory Carrasco y otros v. E.L.A.*, presentado ante la Sala de Aguadilla del entonces Tribunal Superior de Puerto Rico, fue consolidado en instancia con otros dos (2) casos presentados ante la misma sala. Éstos son los casos de *Gilberto Maisonave y otros v. Arce y otros*, Civil Núm. ADP-93-009, y *López Jiménez y otros v. E.L.A.*, Civil Núm. ADP-93-002. En instancia los citados casos de *Fernández Pola y otros v. E.L.A.*, y *Morales Cosme y otros v. E.L.A. y otros*, fueron consolidados entre sí. Por otro lado, consolidamos todos los recursos presentados ante nuestra consideración para fines de resolver la controversia que ahora se nos plantea.

secuencia de la práctica declarada inconstitucional en *Noriega I,* supra. El primero de estos casos, *Fernández Pola y otros v. E.L.A. y otros,* Civil Núm. ADP-90-0945, fue presentado ante la Sala de San Juan del entonces Tribunal Superior. Posteriormente, otros siguieron. Entre éstos se encuentran: *Vives Vázquez v. E.L.A. y otros,* Civil Núm. BAC-93-0013 (Aibonito) y *Gregory Carrasco y otros v. E.L.A.,* Civil Núm. ADP-92-1877 (Aguadilla).([4])

Ante la situación de haberse presentado estos casos en distintas salas del Tribunal de Primera Instancia y aduciendo la existencia de cuestiones comunes de hecho y de derecho con el caso de *Fernández Pola y otros v. E.L.A. y otros,* el Estado solicitó que los casos de *Vives Vázquez v. E.L.A. y otros,* supra (Aibonito) y *Gregory Carrasco y otros v. E.L.A.,* supra (Aguadilla) fueran consolidados con el de *Fernández Pola y otros v. E.L.A. y otros,* supra (San Juan). Ambas solicitudes fueron declaradas sin lugar. De estas determinaciones recurre ante nos el E.L.A. En ambos casos le imputa al foro de instancia haber errado al denegar las solicitudes de consolidación. Nos pide que revoquemos los dictámenes y que ordenemos la consolidación de los casos ante nuestra consideración. Por los fundamentos que ex-

---

([4]) Además de los anteriormente mencionados, se nos ha informado sobre otros casos que igualmente han sido presentados contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) en diversas salas del ahora Tribunal de Primera Instancia que surgen de la práctica declarada ilegal en *Noriega I,* supra. A saber, *López Jiménez v. E.L.A.,* Civil Núm. ADP-93-002 (Aguadilla); *Maisonave Nieves v. Arce,* Civil Núm. ADP-93-009 (Aguadilla); *Gelpí Rodríguez v. E.L.A.,* Civil Núm. KAC-92-1066 (San Juan); *González Claudio v. E.L.A.,* Civil Núm. KDP-93-0126 (San Juan); *Cruz Aguayo v. E.L.A.,* Civil Núm. EDP-93-0086 (Caguas); *López Ortiz v. E.L.A.,* Civil Núm. ADP-93-0095 (Aguadilla); *Gómez Cubero y otros v. E.L.A. y otros,* Caso Núm. ADP-93-0066 (Aguadilla); *Arcelay Medina v. Policía de Puerto Rico y otros,* Civil Núm. ADP-93-0067 (Aguadilla); *Dávila Carrión v. E.L.A.,* Civil Núm. KDP-93-0727 (San Juan); *Díaz Ruiz y otros v. E.L.A. y otros,* Civil Núm. HDP-93-0086 (Humacao); *Vega Rivera v. E.L.A.,* Civil Núm. ADP-93-0046 (Aguadilla); *Serrano Rivas v. E.L.A. y otros,* Civil Núm. IDP-93-0186; *Santiago Estrada y otros v. E.L.A. y otros,* Civil Núm. KDP-93-0805 (San Juan); *Cerpa Rivera v. E.L.A. y otros,* Civil Núm. BAC-93-0117 (Aibonito); *Edwards Nisbitt v. E.L.A. y otros,* Civil Núm. JDP-93-0160 (Ponce); *Silén Acevedo v. Arsenio Torres y otros,* Civil Núm. KDP-93-0849 (San Juan); *González Rivera y otros v. E.L.A. y otros,* Civil Núm. KDP-93-0746 (San Juan); *Delgado Colón v. E.L.A.,* Civil Núm. KDP-93-0746 (San Juan).

pondremos procede que revoquemos los dictámenes recurridos.([5])

Los casos ante nuestra consideración suponen la elaboración de una cuestión de derecho común a todos ellos. Debemos establecer los parámetros y los criterios que deben guiar la discreción del Tribunal al analizar las solicitudes de consolidación presentadas por el E.L.A. Debemos tener presente varias consideraciones esenciales al llegar a nuestra determinación. Primeramente, no podemos olvidar las dimensiones de los casos que se han presentado en el Tribunal de Primera Instancia motivados por la práctica ilegal del Gobierno de levantar expedientes a base de consideraciones puramente ideológicas. En segundo lugar, cualquier análisis de las controversias procesales que se suscitan en nuestro ordenamiento requiere que reconozcamos el carácter jurisdiccionalmente unificado de nuestro Sistema Judicial. También deben atenderse las normas que, no sólo reconocen la facultad, sino también el deber de los tribunales de intervenir dinámicamente en la tramitación de los casos ante su atención, aun cuando las partes no lo soliciten. Y, finalmente, debe recordarse la facultad inherente que tiene este Tribunal para disponer las bases reglamentarias necesarias para propiciar la más eficiente administración de la justicia, no sólo en relación con los casos ante nuestra consideración, sino también en cuanto al Sistema Judicial en general.

---

([5]) Igual solicitud presentó el E.L.A. en el caso de *Fernández Pola y otros v. E.L.A.*, supra. Dado que al momento ya se habían presentado ante este Tribunal los recursos en los casos de *Vives Vázquez v. E.L.A. y otros*, supra, y *Gregory Carrasco y otros v. E.L.A.*, supra, el tribunal de instancia decidió no expresarse respecto a la solicitud de consolidación hasta que delineáramos las pautas a seguir en relación con dicha petición. Sin embargo, ordenó al E.L.A. contestar las demandas presentadas en los citados casos de *Fernández Pola y otros v. E.L.A.*, y *Morales Cosme y otros v. Arce y otros*. Ambos están ante el Tribunal de Primera Instancia, Sala Superior de San Juan. De esta determinación recurrió el E.L.A. ante nos en el citado caso de *Fernández Pola y otros v. E.L.A.* Le imputó al foro de instancia haber errado al ordenarle contestar la demanda antes de disponer sobre el planteamiento de consolidación.

## III

Para resolver la controversia que se nos presenta, comenzaremos analizando los contornos de la figura procesal de la consolidación. Aunque esta figura ha formado parte de nuestro ordenamiento procesal desde comienzos de siglo, nunca ha sido objeto de un análisis abarcador por nuestra parte. Sí hemos tenido la oportunidad de expresarnos sobre los propósitos de la misma.

■ Así, en *López Valdés v. Tribunal Superior*, 96 D.P.R. 779, 792 (1968), reconocimos al comentar la regla de procedimiento civil atinente a la consolidación, entonces vigente, que "[u]n principio cardinal en nuestro derecho procesal es el de evitar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes cuando la naturaleza de las causas lo permiten". De igual forma, pero años más tarde, reseñamos sobre la finalidad de la consolidación los aspectos siguientes: "evitar la proliferación de acciones, lograr la economía procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente." (Énfasis suprimido.) *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 608 (1989).

La regla de procedimiento civil de la cual surge la figura de la consolidación dispone como sigue:

> Cuando estén pendientes ante el tribunal pleitos que envuelvan cuestiones comunes de hechos o de derecho, éste podrá ordenar la celebración de una sola vista o juicio de cualquiera o de todas las cuestiones litigiosas envueltas en dichos pleitos; podrá ordenar que todos los pleitos sean consolidados; y podrá, a este respecto, dictar aquellas órdenes que tiendan a evitar gastos innecesarios o dilación. Regla 38.1 de Procedimiento Civil, *supra*.

Esta redacción corresponde sustancialmente a la Regla 42(a) Federal de Procedimiento Civil, 28 U.S.C. Ap. Dado lo anterior, resulta prudente que, al delimitar los contornos

de la figura procesal de la consolidación en nuestra jurisdicción, examinemos la experiencia y los desarrollos normativos en la jurisdicción federal respecto a esta figura. Este análisis, sin embargo, no puede perder de vista la naturaleza de nuestro sistema unificado de justicia, que supone consideraciones muy particulares, a la luz de las cuales se moldeará la norma que será de aplicación en nuestra jurisdicción. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 588 (1983); *Pueblo v. Pacheco*, 83 D.P.R. 526, 530–531 (1961). Vistos los propósitos enumerados, atendamos el contenido de la Regla 38.1 de Procedimiento Civil, *supra*, sobre consolidación.

■ De la redacción de la regla surge que existen dos (2) requisitos para que proceda inicialmente una solicitud de consolidación: que los casos presenten cuestiones comunes de hechos o de derecho, y que éstos estén pendientes ante el tribunal.

A. Con respecto al primero de estos requisitos, los tribunales federales, al interpretarlo, tienden a hacer un análisis integrado de esta regla junto con las que regulan situaciones análogas.[6] Por ejemplo, distinguen este requisito de la Regla 42(a) federal, *supra*, sobre consolidación, de los de la Regla 18 (28 U.S.C. Ap.) que trata sobre acumulación de reclamaciones (equivalente a nuestra Regla 14 de Procedimiento Civil, 32 L.P.R.A. Ap. III) y los de la Regla 20(a) (28 U.S.C. Ap.) que trata sobre acumulación permisible de partes (similar a nuestra Regla 17.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III). Todas estas reglas, aunque difieren entre sí, tienen un propósito en común: que se puedan resolver distintas reclamaciones de forma simultánea. Con relación a la Regla 18, *supra* (nuestra Regla 14, *supra*) un demandante puede incluir en una de-

---

[6] 9 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 2382, págs. 431–432 (1995).

manda todas las reclamaciones que tenga contra el demandado, aunque no exista relación alguna entre las distintas reclamaciones. En estos casos, por lo tanto, se admite la acumulación de reclamaciones sin necesidad de analizar la similaridad entre ellas. De otra parte, en la Regla 20(a) federal, *supra* (nuestra Regla 17.1, *supra*) se presta especial atención a los aspectos comunes de los hechos. La regla permite que se unan en un mismo pleito, como demandantes o demandados, a todas aquellas personas que tengan una reclamación o contra quienes se tengan reclamaciones, siempre que las mismas "surja[n] del mismo acto, omisión [o] evento". Regla 17.1 de Procedimiento Civil, *supra*. El peso del análisis, por lo tanto, recae sobre la fuente de la reclamación.

En lo que respecta a la regla sobre consolidación, la Regla 42(a) federal, *supra* (nuestra Regla 38.1, *supra*) ésta sólo requiere la existencia de cuestiones comunes de hechos o de derecho. Los casos a consolidarse, por lo tanto, deben tener asuntos en común, a diferencia de la Regla 18 federal, *supra* (Regla 14 nuestra, *supra*) pero no tienen que surgir del mismo evento o transacción, como requiere la Regla 20(a) federal, *supra* (Regla 17.1 nuestra, *supra*).

En cuanto al contenido específico de la regla sobre consolidación, se ha resuelto que no es necesario que la totalidad de las cuestiones de hecho y de derecho sean idénticas. De ahí que la existencia de consideraciones particulares sólo a algunos de los casos no impide que se conceda la consolidación. *Skirvin v. Mesta*, 141 F.2d 668 (10mo Cir. 1944). Tampoco se requiere que tanto las cuestiones de hechos como las de derecho sean comunes en los casos a consolidarse, siendo suficiente que haya similaridad en una u otra. La consolidación tampoco depende de que exista identidad entre las partes en los pleitos a consolidarse, aunque es un aspecto que puede pesar sobre el ánimo del juzgador al tomar la determinación. *In re New York Asbestos Litigation*, 145 F.R.D. 644 (1993); *Cruz v.*

*Robert Abbey, Inc.*, 778 F. Supp. 605 (E.D. N.Y. 1991); *Thayer v. Shearson, Loeb, Rhoades, Inc.*, 99 F.R.D. 522 (W.D. N.Y. 1983). De ordinario, las acciones a consolidarse son de igual naturaleza, aunque ello no es un requisito indispensable para concederla. *Moore's Federal Practice* Sec. 42–16 (1995).

■ B. El otro elemento que, según la regla, debe corroborarse antes de conceder la consolidación, es que los casos estén pendientes ante el tribunal. La jurisprudencia federal ha sostenido reiteradamente que este requisito implica que los casos tienen que estar pendientes ante un mismo distrito federal. *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D. N.Y. 1974); *Silver v. Goodman*, 234 F. Supp. 415 (D. Conn. 1964); *Swindell-Dressler Corporation v. Dumbauld*, 308 F.2d 267 (3er Cir. 1962); *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2do Cir. 1961); *Anschell v. Sackheim*, 145 F. Supp. 447 (D. N.J. 1956); *Facen v. Royal Rotterdam Lloyd S.S. Co.*, 12 F.R.D. 443 (S.D. N.Y. 1952). Esta interpretación responde a la naturaleza del sistema federal, uno de jurisdicción limitada que requiere de un estatuto para que a un tribunal se le confiera jurisdicción sobre un asunto,[7] y por su organización en noventiún (91) tribunales de distrito, con una clara y particularizada demarcación territorial,[8] y trece (13) tribunales de apelaciones, también con una demarcación territorial específica[9]. La misma impide que se consoliden casos que están pendientes ante varios tribunales de distritos federales,[10] o ante los tribunales federales y los tribunales de los estados. El razonamiento en estos ca-

---

[7] En la esfera federal la jurisdicción del tribunal no se presume, hay que alegarla específicamente y tiene que surgir de algún estatuto o regla.

[8] 28 U.S.C. secs. 81–131. El número de tribunales señalado no incluye los tribunales del Canal de Panamá, Guam, las Islas Vírgenes y las Islas Marianas.

[9] Once (11) de éstos corresponden a cada uno de los circuitos federales, uno al Distrito de Columbia y otro al Circuito Federal.

[10] Debemos recordar que estamos tratando la consolidación que promueve la Regla 42(a) de Procedimiento Civil, 28 U.S.C. Ap., no la que se permite bajo 28

sos ha sido técnico y ha estado inmerso en consideraciones jurisdiccionales propias de un sistema de jurisdicción limitada. Los tribunales federales se refieren a conceptos que suponen en dicha jurisdicción la falta de autoridad en ley para promover la consolidación de casos pendientes ante distintos distritos judiciales; conceptos tales como competencia (*venue*) y traslado.([11])

---

U.S.C. sec. 1407, sobre litigación en múltiples distritos. Esta disposición estatutaria permite, a manera de excepción, el traslado de acciones que estén pendientes ante distintos distritos, pero sólo a los fines de llevar a cabo procedimientos anteriores al juicio de forma coordinada o consolidada. El traslado bajo esta sección, a su vez, se distingue de la norma general establecida bajo 28 U.S.C. sec. 1404(a) ó 1406(a), en que al amparo de estas últimas el traslado se efectúa para todo propósito, mientras que el traslado bajo la sección 1407 es sólo para procedimientos anteriores al juicio.

([11]) Incluso, en casos donde puede proceder el traslado de un caso, la posibilidad de que éste pueda ser consolidado con otro pendiente en otro distrito, ha pesado en el ánimo de algunos tribunales al resolver una solicitud de traslado. *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960).

Como ejemplo de los razonamientos que aluden a la falta de autoridad para actuar, en *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D. N.Y. 1974), en el Tribunal de Distrito Federal para el Distrito Sur de Nueva York, se habían consolidado sobre cuarenta y seis (46) casos para procedimientos anteriores al juicio, de acuerdo a 28 U.S.C. sec. 1407. Una de las partes en los casos que el tribunal tenía ante sí para propósitos de resolver los procedimientos con antelación al juicio solicitó que éste ordenara que el suyo fuera consolidado con otro caso pendiente ante dicho tribunal para su resolución en los méritos. El tribunal denegó la solicitud. Razonó que la sección 1407 limitaba la jurisdicción del tribunal al cual se transfiere la acción para procedimientos anteriores al juicio, mientras que la consolidación al amparo de la Regla 42(a) de Procedimiento Civil federal, *supra*, tiene un efecto que trasciende la etapa procesal de la sección 1407. Al así resolver dispuso, expresamente, lo siguiente:

"Rule 42 clearly contemplates a consolidation for proceedings beyond, as well as during, the pretrial stage of an action; indeed what Seattle–First seeks is a consolidation for all purposes. *Shulman II* is pending before this court pursuant to 28 U.S.C. sec. 1407 which restricts the jurisdiction of this court to pretrial proceedings. While *Shulman II* is clearly pending before this court for pretrial purposes it is not pending in the sense meant by Rule 42 because that Rule exists in the context of a consolidation for purposes, extending beyond pretrial. Accordingly, for a court to effect a consolidation pursuant to Rule 42, the actions to be consolidated must both be pending before the court for all purposes. That is not the case here and thus the court does not have the power to consolidate *Shulman II* with *Shulman I* in accordance with Rule 42." *In re Penn Central Commercial Paper Litigation*, supra, pág. 344.

El tribunal se declaró sin facultad, ausente un traslado al amparo de 28 U.S.C. sec. 1404(a) ó 1406(a), para ordenar la consolidación. Como podrá observarse, este es un análisis jurisdiccional válido sólo cuando se está ante un sistema judicial de jurisdicción limitada, donde para que un tribunal tenga jurisdicción sobre un caso o asunto es necesario que exista un estatuto o regla que la viabilice. El consentimiento de las partes y la anuencia del juez no puede suplir esta falta de competencia sobre el caso.

■ En este sentido cabe destacar la diferencia en la naturaleza de los conceptos de competencia en nuestra jurisdicción y en la jurisdicción federal. En la nuestra, los conceptos de "competencia" y "traslado" son normas de trámite administrativo que promueven la mejor distribución de los casos y asuntos a través del sistema, procurando así una más eficiente utilización de los recursos y velando más cabalmente porque se haga justicia. Estas normas disponen las salas del Tribunal de Primera Instancia en las cuales, de ordinario, deberán presentarse y tramitarse las causas. Esto se hace a base de la ubicación de bienes inmuebles, del lugar donde haya surgido la causa de acción o de la residencia de las partes, entre otras consideraciones. Regla 3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ciertamente se trata de un concepto de importancia en nuestra jurisdicción, para los fines de una eficiente administración de la justicia. La inobservancia injustificada de estas normas "puede conducir a la anarquía y resultar en detrimento de 'una solución justa, rápida y económica de todo procedimiento' ". *Lemar S.E. v. Vargas Rosado*, 130 D.P.R. 203, 207–208 (1992). Sin embargo, no se trata de un concepto que dispone la autoridad o facultad potestativa de un tribunal para adjudicar controversias o para administrar los casos ante su consideración. La propia regla aclara que "[t]odo pleito podrá tramitarse en la sección o sala en que se presente por convenio de las partes y la anuencia del juez que presida dicha sala en ese momento. De lo contrario, será transferido por orden del juez a la sección o sala correspondiente". Regla 3.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase la Orden Administrativa Núm. I de 20 de enero de 1995. Más aún, consistente con la unificación de nuestro Sistema Judicial, la referida regla dispone específicamente que ningún caso podrá ser desestimado por haberse presentado en una sala sin competencia. En este sentido, los conceptos de "competencia" y "traslado" que rigen en nuestro Sistema Judicial, se distinguen mar-

cadamente de sus análogos federales, donde dichos conceptos son de naturaleza jurisdiccional y requieren un análisis distinto.

■ En este sentido vemos que 28 U.S.C. sec. 1391, por un lado, y 28 U.S.C. secs. 1404 y 1406, por el otro, tratan de las normas de competencia (*venue*) que facultan, bajo ciertas circunstancias, el traslado de una causa de un tribunal de distrito a otro en la esfera federal. En 28 U.S.C. sec. 1404(a)([12]) se provee para el traslado de ciertas acciones que han sido correctamente presentadas en un tribunal de distrito, cuando sea necesario para la conveniencia de las partes o los testigos y en el interés de la justicia. La acción, sin embargo, y a diferencia de lo aplicable en nuestra jurisdicción, tiene que ser una que pudo haberse presentado originalmente en el tribunal de distrito al cual se transfiere la misma. En otras palabras, sólo procede el traslado si en ambos distritos hay competencia sobre la acción. Se ha interpretado que es indispensable que el tribunal al cual se va a transferir la acción tenga competencia (*venue*), conforme algún estatuto; requiere, además, que el demandado hubiese podido ser emplazado en el distrito donde se transfiere la acción (*transferee forum must be one in which process could have been served on defendant*). Este último requisito se refiere a la actuación afirmativa que le permite al tribunal concretizar la jurisdicción sobre la persona del demandado. C.A. Wright, *The Law of Federal Courts*, 4ta ed., Minnesota, West Publishing Co., 1983, pág. 263.

En este sentido la sección ha sido interpretada por el Tribunal Supremo federal([13]) como dispositiva de que el tribunal al cual se quiera transferir la causa es uno en el cual

---

([12]) Dicha sección dispone que:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought* ." (Énfasis suplido.)

([13]) *Hoffman v. Blaski*, 363 U.S. 335 (1960).

el demandante la pudo haber presentado desde un principio, por lo que debe existir competencia en el tribunal al cual se transfiere la acción y, además, los fundamentos necesarios para establecer la existencia de jurisdicción sobre la persona del demandado. Este requisito impide que, de no existir los requisitos necesarios, el demandado los supla allanándose a la solicitud de transferencia. Cuando el tribunal al cual se trasladará la acción no es uno donde la acción inicialmente pudo haber sido presentada, el consentimiento del demandado no subsana el defecto jurisdiccional. Esta frase de 28 U.S.C. sec. 1404(a) (*where it might have been brought*) impone la obligación de que se tome en consideración la situación existente al momento en que se presenta la acción.[14] Si al efectuar dicho análisis se concluye que al momento en que se presentó la demanda, el distrito al cual se quiere trasladar la acción no es uno en el cual el demandante pudo haber presentado la demanda, carecería el tribunal de facultad o autoridad para ordenar el traslado. *Hoffman v. Blaski*, 363 U.S. 335 (1960).

Vemos de este análisis que, en la jurisdicción federal, el concepto de "competencia" (*venue*) goza de características propias del concepto de "jurisdicción". Se trata como una falta de autoridad para disponer respecto a un caso sobre el cual no existe competencia, de conformidad con algún estatuto que se la confiere (como en el caso de la sec. 1406) o de falta de autoridad para trasladar un caso a un tribunal que carece de competencia (como en el caso de la sección 1404).

 Como podemos observar, en nuestra jurisdicción

---

[14] La sección 1406(a) —28 U.S.C. sec. 1406(a)— por su parte, permite el traslado como una alternativa a la desestimación cuando la acción se ha presentado en un foro sin competencia. Dispone que: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ." En estos casos el traslado se impone como una excepción a la norma que permite la desestimación de la acción que se presenta en un distrito sin competencia (*venue*).

la situación es completamente distinta a la expuesta respecto a la jurisdicción federal. No es de aplicación, por lo tanto, la interpretación restrictiva y extremadamente técnica que sostiene la jurisprudencia federal respecto al requisito de la Regla 42(a) de Procedimiento Civil, *supra*, de que las acciones estén pendientes ante el mismo distrito. Esta interpretación es contraria a los principios básicos de un sistema judicial unificado. Sostiene una política procesal ajena a la norma de flexibilidad y liberalidad que debe prevalecer al atenderse solicitudes de consolidación y milita en contra del concepto de tribunal unificado que impera en nuestra jurisdicción. Analicemos, aunque someramente, el principio de unificación en nuestro sistema de justicia.

C. Expresamente reconocida en el Art. IV, Sec. 2 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, la idea de la unificación del Sistema Judicial en Puerto Rico antecedió la adopción de nuestra Ley Fundamental. Ya para la reforma judicial impulsada en Puerto Rico en 1950, Ley Núm. 432 de 15 de mayo de 1950, se pueden reconocer trazos de la misma. En este sentido nos señala el ex Juez Presidente de este Tribunal, Don José Trías Monge, que la Ley Orgánica de la Judicatura de 1950, en su Art. 3 (4 L.P.R.A. sec. 1n.) "anticipaba ya una parte esencial del sistema vigente". J. Trías Monge, *El Sistema Judicial de Puerto Rico*, Río Piedras, Ed. Universitaria, 1978, pág. 108. El mismo disponía lo siguiente:

> ... Por la presente el territorio de Puerto Rico se constituye en un distrito judicial.
> Los tribunales de justicia ejercerán su jurisdicción sobre la totalidad del territorio comprendido en dicho distrito judicial. Art. 3 de la Ley Núm. 432 de 15 de mayo de 1950, *supra*.

La citada redacción establece un sólo distrito judicial y dispone claramente de limitaciones jurisdiccionales, hasta entonces prevalecientes en nuestro sistema de impartir justicia. El mismo interés que propulsó en 1950 la adop-

ción de esta disposición, encontró apoyo en la Asamblea Constituyente. La disposición finalmente aprobada e incorporada a la Constitución expresa que: "Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración." Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 355.

El ex Juez Presidente Señor Trías Monge nos relata que la adopción de la disposición, aun con su precedente avalado legislativamente sólo dos (2) años antes, encontró, por consideraciones extrañas al asunto que hoy discutimos, fuertes tropiezos entre los miembros de la Asamblea Constituyente.

> La transacción alcanzada, que en realidad no afectó la sustancia de la versión original, consistió en no establecer constitucionalmente el tribunal único, aunque disponiendo, del otro lado, que los tribunales de Puerto Rico constituirían un sistema integrado en cuanto a determinados aspectos. *La enumeración que se hacía de tales aspectos cubría, no obstante, todos los necesarios para el logro de una unificación total.* (Énfasis suplido.) Trías Monge, *op. cit.*, págs. 117–118.

Logró así rango constitucional una idea que precedentemente sólo había sido avalada por legislación. Esta característica de unificación judicial era relativamente novel; al momento, sólo el estado de Nueva Jersey había logrado tal propósito.

Con relación a la enumeración contenida en la Ley de la Judicatura de 1952, que es la misma que contiene la Constitución, se ha dicho que:

> [n]o se estimó que la adición de la frase ["en lo concerniente a jurisdicción, funcionamiento y administración"], tomada de la propia Constitución, limitaba en modo significativo alguno el ámbito de dicha idea, dada la amplitud de los conceptos "jurisdicción", "funcionamiento y administración". Trías Monge, *op. cit.*, pág. 133.

La interpretación de los términos "jurisdicción", "funcionamiento" y "administración" ha sido siempre y

debe seguir siendo liberal, de suerte que se pueda alcanzar en la práctica el propósito de la unificación. Por lo tanto, en lo referente a jurisdicción, la aplicación del principio debe producir el reconocimiento que cualquier parte del Sistema Judicial tiene la facultad para resolver una causa. *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994); *Noriega I*, supra; *Ramírez v. Registrador*, 116 D.P.R. 541 (1985); *Vélez Ruiz v. E.L.A.*, 111 D.P.R. 752 (1981); *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153 (1980); *Fine Art Wallpaper v. Wolff*, 102 D.P.R. 451 (1974); *Rosado v. Registrador*, 71 D.P.R. 553 (1950). La unificación judicial, en la práctica, debe propender a soluciones que atiendan adecuadamente las necesidades cambiantes y cada vez más complejas que tiene nuestra sociedad. Nosotros, como Tribunal de última instancia, tenemos la responsabilidad constitucional de asegurarnos que el referido principio produzca los resultados esperados de suerte que facilitemos la administración justa, rápida y económica de las causas que se presentan ante nuestros tribunales de justicia.

Tomando en consideración todo lo anteriormente expuesto, surge con meridiana claridad que en nuestro Sistema Judicial unificado la frase "[c]uando estén pendientes ante el tribunal", contenida en la Regla 38.1 de Procedimiento Civil, *supra*, sobre consolidación, sólo requiere que los casos a consolidarse se hayan presentado y su trámite esté pendiente ante alguna de las salas del Tribunal de Primera Instancia.([15])

D. Analizados y delimitados los dos (2) requisitos ya mencionados,([16]) pasemos a considerar otros criterios

---

([15]) Existen otras consideraciones propias al sistema federal, cuando se enfrenta el problema de la consolidación de casos pendientes ante distintos distritos, que no están presentes en nuestra jurisdicción. Por ejemplo, cabe señalar, entre otros, el problema de la ley aplicable cuando la jurisdicción del tribunal federal se predica en diversidad de ciudadanía.

([16]) Según la Regla 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, estos requisitos son: (1) que los casos estén pendientes ante el tribunal, y (2) que los mismos presenten cuestiones comunes de hecho o de derecho.

cuya aplicación podría ayudar a guiar el criterio del juzgador al resolver solicitudes de consolidación. En términos generales, la jurisprudencia federal ha resuelto que al decidir sobre una solicitud de consolidación, el juzgador debe considerar si la misma propendería a una resolución justa, rápida y económica de las acciones. Igualmente debe considerar si la consolidación tiende a evitar resultados inconsistentes entre las distintas disputas que presenten cuestiones similares de hecho o de derecho. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11mo Cir. 1985); *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003 (2do Cir. 1995). También de forma general, los tribunales han considerado los perjuicios que la consolidación podría causarles a los litigantes y al sistema de impartir justicia, y la posibilidad de que los mismos no puedan ser evitados mediante órdenes cautelares emitidas por el tribunal sentenciador, prestando especial atención a las circunstancias particulares del caso. Lo importante es que dadas las circunstancias, la consolidación tienda a promover la buena administración de la justicia, la aceleración en la resolución de las disputas y la reducción de costos en la litigación. *Prudential Ins. Co. of Am. v. Marine Nat. Exch. Bank*, 55 F.R.D. 436 (E.D. Wis. 1972); *Hendrix v. Raybestos-Manhattan, Inc.*, supra.[17]

Hay que considerar, también, que la posibilidad de perjuicio no impide necesariamente la concesión de la consolidación. Frente a una alegación de perjuicio por una de las partes, el tribunal debe hacer un balance de los in-

---

[17] En la esfera federal, respecto a los efectos que puede causar la consolidación a las partes, se presta atención al perjuicio que puedan sufrir los litigantes en la resolución del recurso en cuanto al ánimo del juzgador de hechos. *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899 (4to Cir. 1983); *Cain v. Armstrong World Industries*, 785 F. Supp. 1448 (S.D. Ala. 1992); *Bradley v. Soo Line R. Co.*, 88 F.R.D. 307 (E.D. Wis. 1980). Este criterio es considerado por el tribunal sentenciador, ya que en el sistema de justicia federal las acciones, con pocas excepciones, se ven ante un jurado. El criterio carece de importancia en nuestro ordenamiento, donde no existe derecho a juicio por jurado en lo civil, por lo que la posibilidad del perjuicio al que se refiere la jurisprudencia federal citada no es aplicable.

tereses involucrados y ponderar el supuesto perjuicio, que debe ser real, no subjetivo, *versus* el interés de que se logre una solución justa, rápida y económica de la controversia. Debe, además, considerarse la posibilidad de que mediante órdenes cautelares puedan evitarse los efectos perjudiciales de la consolidación. *Consorti v. Armstrong World Industries, Inc.*, supra.([18])

El momento en que se solicita la consolidación es también un factor a considerar. *Moore's Federal Practice and Procedure*, supra, pág. 42–6. El tribunal deberá analizar la etapa procesal en la cual se encuentran las acciones cuya consolidación se solicita. En este respecto considerará: la existencia de mociones potencialmente dispositivas de las acciones que estén pendientes ante los tribunales; si se han presentado todas las alegaciones requeridas por las Reglas de Procedimiento Civil; el descubrimiento de prueba a efectuarse o efectuado en los casos, y cualquier otra consideración respecto al desarrollo procesal de los casos que pueda ofrecer criterios al juzgador para guiar su ánimo.

En todo caso la decisión es circunstancial y requiere medir todas las consideraciones a favor y en contra de la consolidación, prestando particular atención a los hechos que tenga ante sí el juzgador en relación con todos los casos respecto a los cuales se solicita la misma. *Wright and Miller*, supra, pág. 438. Es el balance de todas las consideraciones lo que determina la decisión.

Por último, el juzgador debe tomar en consideración también, cuando sea pertinente, la complejidad de los casos. La consolidación ha sido citada como uno de los mecanismos a seguir para atender adecuadamente casos complejos, ya por la naturaleza de las controversias que pre-

---

([18]) La redacción de la Regla 38.1 de Procedimiento Civil, *supra*, avala la discreción necesaria al disponer que el Tribunal podrá "dictar aquellas órdenes que tiendan a evitar gastos innecesarios o dilación".

sentan o por la multiplicidad de partes. *Manual for Complex Litigation,* Centro Judicial Federal, 3ra ed., 1995, pág. 322.[19] En este sentido, en nuestra jurisdicción la consolidación es un mecanismo adicional con el que cuenta el Tribunal de Primera Instancia para asegurarse de que en los pleitos ante su atención se produzca una "solución justa, rápida y económica ...". Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. De esta forma el Tribunal de Primera Instancia puede cumplir con mayor acierto su obligación de atender cabalmente los casos de esta naturaleza sometidos para su atención. En este sentido nos expresamos anteriormente así, respecto a los casos complejos:

> Los llamados casos complejos constituyen un reto a nuestro sistema judicial, y en particular al ordenamiento procesal moderno. Estos casos se caracterizan por tener múltiples partes y controversias de hechos o de derecho complejas y técnicas. Su manejo requiere remedios extraordinarios y órdenes particulares que reglamenten la conducta procesal de las partes y atiendan adecuadamente las reclamaciones de millonarias sumas de dinero que suelen caracterizar estos litigios. A la par que nuestra sociedad crece y se desarrolla, este tipo de caso aumenta. Los problemas que surgen de la explosión urbana, industrial, científica y tecnológica desafían los esquemas adjudicativos vigentes. Es ineludible el deber de los tribunales de acoplarse a esta nueva realidad. La forma tradicional de resolución de disputas resulta inadecuada para la litigación compleja. A este reto los tribunales tienen que enfrentarse de forma decidida e imaginativa, adaptando los mecanismos procesales existentes y haciendo uso activo de todos los recursos que tienen a su disposición. Hay que estructurar los mecanismos procesales necesarios para adjudicar pronta y adecuadamente este nuevo tipo de controversias. *Vellón v. Squibb Mfg., Inc.,* 117 D.P.R. 838, 847 (1986). *Cf. Ortiz Rivera v. E.L.A., National Ins. Co.,* 125 D.P.R. 65, 69 (1989). Véase, además, *Amaro González v. First Fed. Savs.,* 132 D.P.R. 1042 (1993).

---

[19] En la esfera federal fue esta consideración la que motivó la aprobación de la sección 1407 del título 28 de U.S.C.A. que viabiliza la consolidación de casos, entre estos los complejos, que se encuentran en distintos distritos. Esta disposición sólo permite una consolidación parcial para facilitar la resolución de procedimientos con antelación al juicio.

Entendemos que la consolidación podría en circunstancias apropiadas propender a la mejor administración de este tipo de casos. La determinación, sin embargo, descansa en la sana discreción del juez de instancia, quien deberá decidir, a la luz de los hechos ante sí, la procedencia de la misma. En este sentido el tribunal sentenciador tiene amplia facultad para disponer de los procedimientos ante su consideración de forma que se pueda asegurar la más eficiente administración de la justicia. Véase *Vellón v. Squibb Mfg., Inc.*, supra.

Se trata de la misma facultad que hemos reconocido, o a la cual hemos aludido, en el pasado en múltiples ocasiones y ante diversas situaciones. Véase *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, esc. 8 (1991). Más que una facultad, en la mayor parte de los casos hemos aludido a un deber que se le impone al Tribunal de Primera Instancia de actuar afirmativa y dinámicamente en la tramitación de los casos ante su consideración. Véanse: *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994); *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. 434 (1988); *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20 (1986). Esta intervención no tiene que depender de la solicitud que a los efectos le hagan las partes, sino que puede surgir incluso motu proprio por parte del Tribunal. *Lluch v. España Service Sta.*, 117 D.P.R. 729, 743–744 (1986); *Coop. de Crédito v. Soc. de Gananciales*, 104 D.P.R. 675, 677 (1976); *Corporación Azucarera v. Tribunal Superior*, 104 D.P.R. 214, 218 (1975). En este último caso expresamos que:

> En la ventilación de pleitos que absorben gran parte del tiempo útil del tribunal, las salas de instancia no deben vacilar en utilizar al máximo los recursos de Reglas para aligerar los procedimientos, aun cuando tengan que originarlos motu proprio ante la falta de iniciativa de las partes, con la restricción y mesura que proteja los derechos de los litigantes. *Corporación Azucarera v. Tribunal Superior*, supra, pág. 218.

 Debemos recordar que las Reglas de Procedimiento Civil, al igual que los otros cuerpos de normas procesales, tienen que servir el propósito de resolver justa, rápida y económicamente las controversias que se presenten ante nuestros tribunales. Es por eso que la facultad de actuar afirmativa y dinámicamente en la tramitación de los casos debe ir acompañada de "un enfoque integral, pragmático y creativo de nuestro ordenamiento procesal y sustantivo [para] que con voluntad, sinceridad y acción, [se] le dé vida a dichos valores y los convierta en vivencias y realidades cotidianas, atendiendo así las altas expectativas de nuestro contorno social". *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283, 288 (1988).

Esta facultad permite incluso, en ocasiones, la creación por parte de los tribunales de normas procesales que promuevan la administración de la justicia y la búsqueda de la verdad.

> Los tribunales poseen el poder inherente de crear las reglas de procedimiento necesarias para facilitar la administración de la justicia y promover la búsqueda de la verdad. Este poder, por lo tanto, no es creado ni se circunscribe por los estatutos y reglamentos que lo definen. Por el contrario, se observa que ambos, el procedimiento civil y el procedimiento criminal, comprenden un cuerpo legal creado judicialmente. *Meléndez, F.E.I.*, 135 D.P.R. 610, 615 (1994).[20]

Estas expresiones tienen gran impacto sobre la gestión de los tribunales sentenciadores, que son los que con mayor frecuencia, en el trámite cotidiano, se encuentran ante situaciones noveles para las cuales podría no existir un procedimiento previamente establecido.

 De otra parte, sobre el Tribunal Supremo, por ser el Tribunal de última instancia, recae la responsabilidad de velar por el adecuado funcionamiento del Sistema

---

[20] Allí también aclaramos que el ejercicio de esta facultad está limitado, en cuanto no puede contravenir el ordenamiento vigente. Véase, además, *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529, 542 (1989).

Judicial. Para viabilizar esta gestión, el Art. V, Sec. 6 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, dispone que el poder de reglamentación de los procedimientos en los tribunales es uno que la Rama Legislativa comparte con nosotros. El Art. V, Sec. 7, Const. E.L.A., *supra*, por su parte, hace claro que la administración de los tribunales es un deber que recae exclusivamente en este Tribunal, y en particular sobre el Juez Presidente que es el que dirige su administración.

De todo lo antes expuesto, se puede colegir que mientras la función del tribunal sentenciador es atender los casos y asuntos inmediatamente ante su consideración, nuestro deber trasciende esta función y nos obliga a velar por el adecuado funcionamiento de todo el sistema, en todo momento. Nuestras actuaciones necesariamente van más allá de las particularidades de cualquier caso. Sus efectos están destinados a afectar generalmente los trámites ante los tribunales de justicia. Siempre hemos estado conscientes de este deber y de las responsabilidades que el mismo entraña. Así, por ejemplo, en *Márquez Estrella,* Ex parte 128 D.P.R. 243, 248 (1991), aludimos a "nuestra facultad inherente para pautar normas procesales cuando [é]stas sean necesarias para hacer viable la tramitación de los casos". Allí dispusimos un procedimiento para reglamentar el juicio de exequátur. Igualmente, en *Asoc. Drs. Cuidado Salud Visual v. Morales*, 124 D.P.R. 591 (1989), dispusimos mediante resolución que, sobre el cómputo de los términos dispuestos en las leyes y reglas aplicables a los casos pendientes o a ser presentados ante los tribunales, se excluirían los días que siguieron al paso del huracán Hugo por nuestra isla. En el presente caso actuamos de conformidad con dicha facultad.

En cuanto al alcance de la discreción que ampara al Tribunal de Primera Instancia en la tramitación de los casos, también se ha reconocido bastante amplitud, más aún cuando se trata del manejo de casos complejos.

Igual alcance tiene respecto al mecanismo de la consolidación. El tribunal puede ordenar, a estos efectos, la consolidación sobre determinadas controversias, tanto para fines de los procedimientos anteriores al juicio, como para el juicio propiamente. Estas alternativas son cónsonas con el amplio marco de discreción que tienen los jueces de instancia en el manejo de este tipo de caso.

Igualmente, puede recurrir a otras vías para asegurar el mismo propósito. Por ejemplo, el tribunal sentenciador puede agrupar las reclamaciones a base de su contenido o de las partes envueltas. Podría agruparlas, también, a base de las defensas que se hayan presentado y cuya resolución esté pendiente.

▆ La discreción es amplia. Una determinación sobre una solicitud de consolidación, efectuada luego de un análisis ponderado de la totalidad de las circunstancias de los casos cuya consolidación se solicita, merecerá gran deferencia por parte del tribunal que la revise. Sólo será alterada cuando se haya omitido considerar algún factor importante o cuando de alguna otra forma se incurra en un abuso de discreción.

## IV

En los casos ahora ante nuestra consideración, los jueces que atendieron las mociones de consolidación no tuvieron el beneficio de nuestro análisis. Emitieron sus decisiones sólo a base de los hechos del caso que tenían ante sí. Por ende, no consideraron los factores atinentes a los casos pendientes en otras salas, con los que se pretendía efectuar la consolidación.[21] Al no tener el beneficio de estos otros

---

[21] Ello pudo haber sido procurado mediante una orden dirigida a la parte que solicitó el traslado, el Estado, ya que por la naturaleza muy particular de estos casos era un demandado en prácticamente todos los casos que emanaban de su práctica de "preparar, actualizar y preservar expedientes, carpetas, listas, ficheros, etc., de personas, agrupaciones y organizaciones, única y exclusivamente por creencias o tendencias políticas e ideológicas". *Noriega II*, supra, pág. 926.

hechos, y nuestras guías de análisis con respecto a la consolidación, el balance de intereses efectuado estuvo incompleto. Procede, pues, revocar las determinaciones emitidas en *Vives Vázquez v. E.L.A. y otros*, CE-93-341, y *Gregory Carrasco y otros v. E.L.A.*, CE-93-575, mediante las cuales se denegaron las peticiones de consolidación presentadas.

Por la naturaleza de los casos, el hecho que se encuentran pendientes ante el foro de instancia otros que emanan de los mismos hechos y en consideración a nuestra facultad inherente para administrar el Sistema Judicial, el Tribunal le instruye al Juez Presidente que designe un Juez Superior para que atienda todos los casos de esta naturaleza que hayan sido presentados y se encuentren pendientes ante el Tribunal de Primera Instancia.[22] El E.L.A. deberá informar[23] al Juez Superior, así designado, todos los casos de esta naturaleza que se encuentren pendientes ante el Tribunal de Primera Instancia, dentro de un término no mayor de diez (10) días a partir de la fecha en que se notifique la designación de dicho juez. A este Juez Superior se le asignarán todos los casos identificados y será éste quien resuelva las mociones de consolidación a tenor con las normas antes esbozadas; también determinará cuál será el manejo de los mismos y los resolverá en los méritos. Los casos continuarán en las Salas en que han sido presentados hasta que el juez designado disponga otra cosa. Di-

---

[22] Entendemos que en el futuro podrían surgir otros casos, con dimensiones análogas a las de los presentes, que ameriten igualmente la designación de un juez itinerante. Siendo este un asunto administrativo, de surgir tal necesidad la misma podría ser identificada por el Consejo Asesor Judicial, el cual está constituido en lo pertinente por el Juez Presidente del Tribunal Supremo, la Directora Administrativa de los Tribunales y los Jueces Administradores Regionales. Este Consejo se reúne, como regla general, cada dos (2) meses para atender problemas particulares que surjan con relación a la administración del sistema de justicia. Este es el foro más adecuado para identificar la presencia de casos que ameriten tal designación y traer dicha necesidad a la atención del Juez Presidente, quien tiene la facultad de efectuar la misma.

[23] Incluirá, para cada caso, el nombre de las partes, el número que le ha sido asignado, la sala del Tribunal de Primera Instancia donde se encuentra y el nombre del (de la) juez que tiene a su cargo el mismo.

cho juez actuará como juez itinerante en estas salas para propósitos de atender estos casos, facilitando así el acceso de las partes y de los litigantes al tribunal de justicia.[24] Si después de analizar los casos, el juez designado entendiese que el estado procesal de alguno de ellos no justificaba la reasignación del mismo por la etapa avanzada en que se encuentre su tramitación, se lo informará al Juez Presidente quien podrá ordenar que éste continúe bajo la atención del juez que antes lo tenía a su cargo. Este proceder es cónsono con el interés que ha informado el curso decisorio que hemos seguido en la presente opinión.

*Se dictará sentencia de conformidad con lo anterior.*

El Juez Asociado Señor Rebollo López disintió con una opinión escrita. El Juez Asociado Señor Negrón García se inhibió.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Una de las funciones principales de un juez apelativo, no hay duda, consiste en asegurarse de que se le haga cumplida justicia a los ciudadanos de la jurisdicción donde ejerce su delicado ministerio. Ello se logra, entre otros, me-

---

[24] No obstante lo anterior, los demandados que a la fecha de esta decisión no hayan presentado su contestación a la demanda deberán hacerlo dentro de un período no mayor de diez (10) días a partir de la remisión del mandato en los casos ahora ante nuestra consideración a las distintas salas del Tribunal de Primera Instancia. No se concederán prórrogas, salvo que el juez designado determine que existe una causa justificada que la amerite.

Respecto a este asunto quisiéramos recalcar que siempre se debe tener presente que los casos al consolidarse no pierden su carácter individual. "De ordinario la consolidación de [los] pleitos no tiene el efecto de que automáticamente las partes y *alegaciones* de uno se conviertan en partes y alegaciones del otro ...." *Cuadrado v. García*, 99 D.P.R. 154, 157 (1970). Véase *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933). De lo anterior se deduce que, aun cuando las acciones que nos ocupan sean consolidadas, las partes demandadas deberán presentar sus contestaciones a las demandas presentadas en su contra y llevar a cabo el descubrimiento de prueba a tenor con sus alegaciones.

diante el establecimiento por el juez de normas jurisprudenciales jurídicamente correctas, claras y prácticas que promuevan, y regulen, el eficiente funcionamiento del sistema de justicia en el cual labora.

En la consecución de ese deseado objetivo, tampoco debe haber duda alguna sobre ello, el juez apelativo tiene que actuar con imaginación y creatividad. Dichas características, sin embargo, no pueden llevar al juez a envolverse en un ejercicio de "acrobacia mental jurídica" que resulte o desemboque en la creación de "embelecos procesales jurídicos"; situación que, en lugar de simplificar, aclarar y fomentar la correcta solución jurídica de las controversias que se plantean, presentes y futuras, ante los tribunales de nuestro País, lo que causa es confusión y desorientación en la profesión en general.

Una lectura, sosegada y analítica, de la opinión que hoy emite una mayoría de los integrantes del Tribunal demuestra que, lamentablemente, eso es lo que ha sucedido en el presente caso. So color de la "facultad inherente [de este Tribunal] para administrar el Sistema Judicial" (opinión mayoritaria, pág. 143), del "deber ... de actuar afirmativa y dinámicamente en la tramitación de los casos ante su consideración" (íd., pág. 139), y de la "flexibilidad y liberalidad que debe prevalecer al atenderse solicitudes de consolidación" íd., pág. 133), en el día de hoy la Mayoría crea o establece la figura del "juez itinerante", o flotante. Este, al igual que el vendedor a domicilio o el embajador plenipotenciario y sin cartera, viajará por nuestro País, presidiendo las diferentes Salas del tribunal de primera instancia en que se hayan radicado las distintas demandas relacionadas a la materia que hoy ocupa nuestra atención; además, conforme dictamina la Mayoría, "determinará cuál será el manejo de los [casos] y los resolverá en los méritos". Íd., pág. 143.

Por considerar que el procedimiento establecido por la Mayoría de los integrantes del Tribunal es uno totalmente

innecesario y completamente impráctico, el cual difícilmente podrá ser utilizado o aplicado en posteriores ocasiones a otros casos, es que disentimos.

En nuestro criterio procede denegar, desde este mismo momento y en esta etapa de los procedimientos, la solicitud de consolidación radicada por el Estado; ello por los fundamentos que más adelante expondremos y argumentaremos en detalle.

Realmente *no* alcanzamos a comprender la necesidad de privar a los distinguidos magistrados que laboran en las diferentes Salas del Tribunal de Primera Instancia de la facultad que por ley poseen de resolver los casos y controversias que surgen en sus respectivas regiones judiciales, tal y como ello debe ser.

Las cuestiones de derecho planteadas en los casos ante nuestra consideración —respecto a la existencia de culpa y quién responde por los daños causados por la misma— ya fueron resueltas por este Tribunal a favor de los demandantes. En consecuencia *no* existe peligro alguno de decisiones contradictorias. Únicamente resta por dilucidar si los demandantes efectivamente sufrieron daños debido a la acción culposa del Estado y la cuantía a concederse, por este concepto, a los demandantes en cada caso conforme los hechos particulares de los mismos; cuantía de daños que, en algunos casos, será nominal, y, en otros casos, será considerable.

En otras palabras, y dicho de manera sencilla, se trata de la dilucidación —entiéndase, la adjudicación y apreciación de unos hechos— de casos de daños y perjuicios que *no* plantean mayor dificultad, los cuales deben ser resueltos en la región judicial en la cual surgieron por los magistrados que laboran en las mismas; ello con el consabido beneficio para los diferentes demandantes, y sus testigos, los cuales no tendrán que incurrir en gastos de viaje y de alimentos.

# I

En *Noriega v. Gobernador*, 122 D.P.R. 650 (1988), al confirmar la sentencia del foro de instancia mediante la cual éste había declarado que era inconstitucional la práctica del Estado de levantar, actualizar y preservar expedientes, carpetas, listas, ficheros, etc., de personas, agrupaciones y organizaciones, *única y exclusivamente debido a las creencias o tendencias políticas e ideológicas de éstas*, expresamos que:

> *No hay nada más preciado para un "hombre de bien" que su dignidad y reputación en la comunidad.* Si por sus actuaciones ilegales o inmorales las hace quedar en entredicho, responderá a su conciencia, a sus seres más íntimos y a todos sus congéneres. Estará, en dicho caso, sujeto a las sanciones penales y civiles que correspondan. Pero si su dignidad y reputación son afectadas ilegalmente por el propio Estado por el mero hecho de haber ejercitado sus derechos fundamentales, según éstos están garantizados en la Constitución, *su yo interno debe poseer un cauce adecuado para la reparación por las faltas a su dignidad y a su honor. En el sistema democrático en que convivimos le corresponde a los tribunales atender tales reclamos y diseñar remedios que propendan a aminorar el daño irreparable que el ciudadano ha sufrido por razón de los desmanes del Estado.* (Énfasis suplido.) *Noriega v. Gobernador*, ante, pág. 654.

Aproximadamente cuatro (4) años más tarde, en *Noriega v. Gobernador*, 130 D.P.R. 919, 932 (1992), al reconocer que desde sus inicios "estábamos ante un caso constitucional e históricamente único de singulares remedios, cuya trayectoria requería el más ponderado análisis judicial sobre la marcha", *resolvimos que, salvo las excepciones indicadas* —referentes las mismas a expedientes de agrupaciones clandestinas que "han asumido y aceptado públicamente, como medio para lograr sus fines, la amenaza y la violencia" (Íd., pág. 944)— *no resultaba procedente en derecho el reclamo de confidencialidad que hacía el Estado en*

*relación con dichas carpetas*; razón por la cual confirmamos la negativa del tribunal de instancia de eliminar de dichas carpetas el nombre de los agentes, y personas, que se mencionaban en las mismas.

Procede que se *enfatice* el hecho de que en la decisión antes mencionada, *hicimos claro que*, sujeto a las normas vigentes en materia de daños, "la responsabilidad civil *y la condena total y única [por esta situación] tienen que recaer sobre el Estado*, [que fue el] que montó todo un costosísimo y elaborado aparato oficial para pervertir la útil facultad investigativa de la policía y así mal utilizar esas discrepancias ciudadanas". (Énfasis en el original suprimido y énfasis suplido.) *Noriega v. Gobernador*, 130 D.P.R. 919, 947 (1992).

*Las demandas contra el Estado no se hicieron esperar.* Las mismas se han estado radicando en el Tribunal de Primera Instancia de nuestro País.(¹) El Estado ha solicitado la *consolidación* de los referidos pleitos. Los demandantes se han opuesto a dicha solicitud. *Esa es la controversia que hoy nos toca dilucidar y resolver.*

## II

*Los hechos*

A. En febrero de 1993, el señor Julio Vives Vázquez radicó ante la Sala de Aibonito del Tribunal Superior de Puerto Rico, hoy Tribunal de Primera Instancia,(²) una demanda contra el Estado Libre Asociado de Puerto Rico (en

---

(¹) Según nos informa el Estado, hasta el momento de la radicación de su petición de *certiorari*, se habían radicado nueve (9) demandas alegando daños por violaciones a los derechos civiles en relación con la práctica de abrir expedientes e investigar las actuaciones de ciudadanos por el sólo motivo de su ideología política. Estas demandas han sido radicadas en las Salas de Aguadilla, San Juan, Caguas y Aibonito del antiguo Tribunal Superior.

(²) Por motivo de la aprobación de la Ley de la Judicatura de Puerto Rico de 1994, Ley Núm. 1 de 28 de julio de 1994 (4 L.P.R.A. sec. 22 *et seq.*), en vigor desde el 24 de enero de 1995.

adelante E.L.A.) y la Autoridad de Acueductos y Alcantarillados en la que alegó que el E.L.A. violó sus derechos civiles mediante la práctica de levantar expedientes, ficheros o tarjetas ("carpetas") a través de la Policía de Puerto Rico.

En síntesis, alegó que durante la década de 1960 la División de Inteligencia de la Policía de Puerto Rico le abrió la carpeta número 15852 de esa División y que, desde entonces hasta el presente, ha sufrido persecución y hostigamiento continuo por agentes del E.L.A. en todas las fases de su vida, y que todas esas actuaciones ocurrieron por el único motivo de que el demandante era, y es, independentista.[3] Como consecuencia de las actuaciones antes indicadas, alegadamente se vio privado de su salario y sufrió pérdida de ingresos, lo cual estima en un millón de dólares. Alegó, además, que en el 1971 se le fabricó un caso por violación a la Ley de Explosivos de Puerto Rico, a consecuencia de lo cual sufrió pérdida de ingresos, daños morales de diversas índoles, así como otros daños generales y especiales no especificados en la demanda, daños que valora en una suma no menor de un millón de dólares (1, 000, 000).

Por otra parte, el señor Vives Vázquez alegó en su demanda que agentes del E.L.A. "realizaron actos similares de mantener fichas, expedientes y/o carpetas abiertas a un sinnúmero de ciudadanos puertorriqueños" y que "realizaron actos de persecución y hostigamiento similares y distintos de los realizados contra él, contra otros miles de ciudadanos de Puerto Rico, por el hecho de profesar la ideología independentista". Como consecuencia de los actos realizados, contra él y contra otros ciudadanos, por motivo de su ideología independentista, el señor Vives alega que el

---

[3] Entre los actos de persecución y hostigamientos de que, alegadamente, ha sido víctima, señala Vives Vázquez los siguientes: (1) vigilancia continua; (2) interrogatorios a vecinos y compañeros de trabajo sobre sus actividades; (3) amenazas; (4) detenciones y allanamientos ilegales; (5) persecución y hostigamiento en el empleo; (6) discrímenes de diversa índole; (7) se le negó ascensos con el propósito de que cesara en su empleo en la Autoridad de Acueductos y Alcantarillados.

E.L.A. ha ocasionado "daños inestimables" a dicha ideología, que según su estimación requerirán una erogación no menor de cincuenta millones de dólares (50, 000, 000) para ser mitigados.[4]

En marzo de 1993, el E.L.A. solicitó de la Sala de Aibonito del antiguo Tribunal Superior la consolidación del caso de Vives Vázquez con el caso Civil Núm. KPD-90-945, *Rosalí Fernández Pola v. E.L.A.* Procede que se enfatice que el caso de *Rosalí Fernández Pola v. E.L.A.* es un pleito de clase, radicado ante el antiguo Tribunal Superior de Puerto Rico, *Sala de San Juan,* sobre derechos constitucionales, derechos civiles, 42 U.S.C. sec. 1983 y es a su vez el caso más antiguo (radicado el 1ro de octubre de 1990) de los que han surgido como secuela de los casos de *Noriega v. Gobernador,* ante. Dicha solicitud fue declarada no ha lugar por el tribunal de instancia.[5] El Estado recurrió entonces ante este Tribunal vía recurso de *certiorari.* Mediante Resolución de 4 de agosto de 1993, le concedimos a la parte demandante recurrida el término de veinte (20) días para mostrar causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria de la resolución recurrida. La parte demandante recurrida ha comparecido. Debemos, en consecuencia, resolver si procede o no la consolidación del caso de Vives Vázquez con el de *Rosalí Fernández Pola v. E.L.A.,* ante.

B. Por otra parte, durante los años 1992 y 1993, tres (3) *grupos* de demandantes radicaron, *separadamente,* ante el antiguo Tribunal Superior, *Sala de Aguadilla,* tres

---

[4] En resumen, y tal cual se desprende de la súplica de la demanda radicada por el señor Vives, éste solicita que se le ordene al Estado pagar al demandante la suma de tres millones de dólares ($3,000,000) y pagar cincuenta millones de dólares ($50,000,000) para el establecimiento de un fondo "para ser administrado exclusivamente por personas que profesen la ideología independentista, a fin de realizar una campaña educativa y publicitaria con el propósito de mitigar los daños no cuantificables que se han causado a los derechos constitucionales de la parte demandante, de las personas que profesan su ideología, y a la ideología política de la independencia para Puerto Rico".

[5] El Estado Libre Asociado de Puerto Rico (en adelante E.L.A.) solicitó reconsideración a lo cual el tribunal de instancia respondió con un no ha lugar.

(3) acciones civiles de daños y perjuicios contra el E.L.A. en las que alegaron haber sufrido daños de diversas índoles como consecuencia de la misma práctica declarada inconstitucional en *Noriega v. Gobernador*, 130 D.P.R. 919 (1992).[6] El 31 de marzo de 1993, el Estado igualmente solicitó de la Sala de Aguadilla del antiguo Tribunal Superior la consolidación de dichos casos con el antes mencionado caso de *Rosalí Fernández Pola v. E.L.A.*, ante, que está pendiente en la Sala de San Juan del antiguo Tribunal Superior. Dicha solicitud fue declarada no ha lugar mediante resolución emitida por el antiguo Tribunal Superior, Sala de Aguadilla, el 15 de septiembre de 1993. En la misma, el referido tribunal de instancia indicó que, a pesar de que existen cuestiones de hecho comunes entre los casos, razón esta por la cuál los tres (3) casos radicados en Aguadilla ya habían sido consolidados entre sí, las partes allí demandantes se oponen a su consolidación con el caso de *Rosalí Fernández Pola v. E.L.A.*, ante. Además, a juicio del tribunal de instancia, conceder lo solicitado por el Estado haría del litigio uno muy oneroso para las partes demandantes y los testigos. Por esas razones, el antiguo Tribunal Superior, Sala de Aguadilla, declaró sin lugar la solicitud de consolidación.[7]

El Estado, igualmente, recurrió de dicha resolución, vía petición de *certiorari*, ante este Tribunal. Mediante Resolución, de 1ro de octubre de 1993, este Tribunal ordenó a la parte demandante recurrida mostrar causa por la cual no se debía expedir el auto solicitado y dictar sentencia revocatoria de la resolución recurrida. Además, en auxilio de nuestra jurisdicción, ordenamos la paralización de los procedimientos a nivel de instancia. La parte demandante recurrida ha comparecido. Debemos, igualmente, resolver si

---

[6] Estos son los casos *Gregory Carrasco y otros v. E.L.A.*, Civil Núm. ADP-92-1877; *Gilberto Maisonave Nieves v. Catalina Arce y otros*, Civil Núm. ADP-93-009; y *Heriberto López Jiménez y otros v. E.L.A.*, Civil Núm. ADP-93-002.

[7] Dicha resolución fue dictada el 15 de septiembre de 1993, habiéndose archivado en autos copia de la notificación el 17 de septiembre de 1993.

procede la consolidación de estos casos con el de *Rosalí Fernández Pola v. E.L.A.*, ante.

C. *Rosalí Fernández Pola v. E.L.A.*, ante —caso radicado ante la *Sala de San Juan* del antiguo Tribunal Superior— es un *pleito de clase* que fue presentado por los allí demandantes, "por sí, en representación y para beneficio de otros similarmente situados, de conformidad con la Regla 20 de las de Procedimiento Civil".[8] En la demanda enmendada que se radicara en dicho caso se alega que, cada uno de los demandantes, así como cada uno de los integrantes de la clase, ha sido discriminado por razones ideológicas, razón por la cual "los demandantes poseen el mismo interés y han sufrido daños similares a los demás integrantes de la clase".

Se señala, además, que la clase representada por los allí demandantes fue objeto de una o más de diversas prácticas realizadas por el E.L.A., así como por personas particulares y entidades privadas, tales como: (1) recopilación de información; (2) intervenciones indebidas con patronos (públicos y privados) e instituciones educativas (públicas y privadas); (3) observación y vigilancia indebida; (4) hostigamiento, intimidación, persecución, fabricación de casos criminales y otras intervenciones injustificadas; (5) distribución indebida de la información recopilada. Finalmente, se señala que "los miembros de la clase han sufrido daños de diversas índoles a causa de las actuaciones aquí alega-

---

[8] Según surge de la demanda enmendada, la clase consiste de "todas las personas, organizaciones, agrupaciones, asociaciones que a partir del 31 de julio de 1989 comenzaron a recibir y han recibido los expedientes o carpetas abiertos ilegal e inconstitucionalmente ...". Consiste, además, de "todas las personas, organizaciones, agrupaciones, asociaciones que a partir del 6 de julio de 1992 comenzaron a recibir y han recibido los expedientes o carpetas ...". Consiste, también, de "todas las personas, organizaciones, agrupaciones y asociaciones que han de recibir dichos expedientes o carpetas a partir de la fecha de presentación de esta enmienda a la demanda". Finalmente, la demanda enmendada señala que la clase también incluye a "los familiares —ascendientes, descendientes, cónyuges, herederos, sucesores en derecho y otros— de las personas, y los integrantes de las organizaciones, agrupaciones y asociaciones a las cuales se ha entregado o se le entregará un expediente ...; así como las sociedades legales de gananciales y/o las comunidades de bienes que integran los demandantes junto a sus respectivas parejas". La clase no ha sido certificada aún.

das, aunque similares y comunes a todos los integrantes de la clase".([9]) Por todo ello, los allí demandantes alegan tener causas de acción bajo las Constituciones de Puerto Rico y Estados Unidos, así como bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, la Ley Federal de Derechos Civiles y diversas otras leyes especiales.([10])

Merece que se señale que en dicho caso, el Estado solicitó del tribunal que ordenara la consolidación, de este caso, con otras ocho (8) acciones civiles radicadas contra éste a raíz de la práctica que fuera declarada inconstitucional en *Noriega v. Gobernador*, ante, El foro de instancia —Hon. José E. Broco Oliveras, Juez— *no ha resuelto aún la mencionada solicitud de consolidación.*([11])

---

([9]) Los demandantes adujeron como justificación para la certificación de la clase las siguientes razones: (1) que el número de personas en la clase es tan numeroso que resulta impracticable la presentación de demandas individuales; (2) que a medida se va haciendo entrega de los expedientes el número de integrantes de la clase continua aumentando; (3) que los integrantes de la clase residen en diversas partes de Puerto Rico; (4) que, en términos generales, los integrantes de la clase son personas de escasos recursos económicos y no todos tienen la capacidad para hacer valer sus derechos de forma individual; (5) que los demandantes no tienen intereses antagónicos con otros integrantes de la clase; (6) que los demandantes representan adecuadamente los intereses de los demás integrantes de la clase; (7) que las reclamaciones de los demandantes son típicas de las reclamaciones de los demás integrantes de la clase; (8) que existen cuestiones comunes de hecho y de derecho a todos los integrantes de la clase; (9) que la tramitación de pleitos separados crearía el riesgo de adjudicaciones inconsistentes con respecto a miembros individuales de la clase y de que esas adjudicaciones puedan, para todos efectos prácticos, disponer de los intereses de los otros miembros de la clase que no sean partes en esos pleitos; (10) que habida cuenta del curso de conducta exhibida por los demandados contra los integrantes de la clase, las cuestiones de hecho y derecho comunes a los integrantes de la clase predominan sobre cualesquiera cuestiones que afectan solamente a miembros individuales; (11) que el pleito de clase es superior a cualquier otro método disponible para resolver las controversias presentadas en esta demanda y representa el método más justo y eficiente para la adjudicación de estas.

([10]) Los demandantes también alegan que los demandados violaron las disposiciones de la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. sec. 13 y ss; la Ley Núm. 47 de 28 de abril de 1930 (29 L.P.R.A. secs. 131–135) (lista negra para negar empleo); la Ley Núm. 382 de 11 de mayo de 1950 (29 L.P.R.A. sec. 136) (Interferencia con afiliación política —responsabilidad civil); la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) (discrimen por razón de edad, raza, color, religión, sexo, origen social, o nacional o condición social), y la Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. secs. 65–76) (derecho de los empleados a organizarse y a negociar).

([11]) Los procedimientos en los casos que se ventilan ante las Salas de Aguadilla y Aibonito del antiguo Tribunal Superior, fueron paralizados por Orden de este Tribunal Supremo por resoluciones de 4 de agosto, y de 1 y 11 de octubre (recursos CE-93-341, CE-93-575 y CE-93-600). Según alega el Estado, los casos que se ventilan

## III

El Estado solicita la consolidación de los casos de epígrafe con el caso de *Rosalí Fernández Pola v. E.L.A.*, ante, para lograr, según alega, una solución rápida, justa y económica de todos los pleitos. Según el Estado, todos los casos plantean cuestiones comunes de hecho y de derecho porque todas las alegaciones "surgen del mismo hecho, evento y práctica ilegal de persecución por razones ideológicas". Señala, además, que el derecho aplicable a todas las acciones es el mismo: "la imposición de responsabilidad civil por los alegados daños causados a los demandantes."

También invoca el Estado, como fundamento para su solicitud de consolidación, lo extremadamente oneroso que resultaría para éste, en términos de recursos económicos, esfuerzos y tiempo, el tener que atender reclamaciones similares alrededor de toda la Isla. En relación a los testigos, señala que todos los potenciales testigos de la parte de-

---

en Caguas y los demás casos que se ventilan en San Juan ante salas presididas por otros jueces, han sido paralizados por órdenes de los propios tribunales de instancia. Sin embargo, a pesar de que aún no se ha resuelto la solicitud de consolidación, el juez que preside en el caso *Rosalí Fernández Pola v. E.L.A.* (Juez Broco Oliveras) ordenó al Estado contestar la demanda radicada en dicho pleito antes de 15 de octubre del pasado año. Dicha orden fue dictada y notificada el 9 de septiembre de 1993, haciéndose constar en minuta de esa misma fecha. De la misma, el Estado recurrió ante este Tribunal por medio de petición de *certiorari* en la que señala como error de derecho el que se le ordenara contestar la demanda sin que se hubiera resuelto antes las peticiones de consolidación.

El 11 de octubre pasado este Tribunal emitió resolución concediendo a la parte demandante recurrida término de veinte (20) días para mostrar causa por la cual éste no debe expedir el auto solicitado y dictar sentencia revocando la resolución recurrida. Además, en auxilio de nuestra jurisdicción, ordenamos la paralización de los procedimientos ante el tribunal de instancia. La parte demandante recurrida ya ha comparecido. También lo ha hecho la parte demandante en el caso *Amado Morales Cosme y otros v. E.L.A. y otros*, KDP-92-1255 (805) ventilándose ante el antiguo Tribunal Superior, Sala de San Juan, ante el Hon. Juez Broco Oliveras. Este pleito, que también ha surgido a raíz de lo resuelto en *Noriega v. Gobernador*, 130 D.P.R. 919 (1992), fue inicialmente radicado en la Sala del antiguo Tribunal Superior, Sala de San Juan que preside la Hon. Carmen Celinda Ríos, J. El 25 de enero de 1993, ésta ordenó su consolidación con el caso de *Rosalí Fernández Pola v. E.L.A.* Desde entonces, ambos casos se han estado tramitando en conjunto, aunque el juez que preside sobre el caso de *Rosalí Fernández Pola v. E.L.A.* no ha resuelto aún sobre su consolidación.

mandada son "presumiblemente" de San Juan, por lo que la consolidación permitiría una mejor utilización de éstos. Por último, el Estado señala que no conceder la consolidación solicitada, crearía el riesgo de que en pleitos similares resulten decisiones dispares o contradictorias.

Por su parte, el demandante Julio Vives Vázquez se opone a la consolidación de su caso con el de *Rosalí Fernández Pola v. E.L.A.*, ante, porque alega que ello le privaría de manera definitiva de una solución, justa, rápida y económica en su caso; ello, en vista de que la consolidación aumentaría los costos del litigio y dilataría su solución final. Señala, además, que las alegaciones que hace el Estado en su moción solicitando la consolidación y en la moción de reconsideración, no demuestran la existencia de cuestiones comunes de hecho o de derecho que justifique consolidar los casos. El demandante alega que su caso presenta unos hechos particulares, tales como la fabricación de un caso criminal, persecución y hostigamiento por parte del Estado al realizar allanamientos ilegales en lugares bajo su control, y que se le forzó a salir de su empleo en la Autoridad de Acueductos y Alcantarillados, entre otros. Según señala el demandante Vives Vázquez, la adecuada adjudicación de su caso requiere prueba distinta a la que requiere el caso de *Rosalí Fernández Pola v. E.L.A.*, ante. Señala que, a pesar de haber sufrido los daños de todas aquellas personas a quienes se levantó expedientes, él ha sufrido otros daños particulares con respecto a los cuales, "[l]a carpeta o el expediente lo que sirve es como prueba robusta y convincente para su reclamación".

El demandante Vives Vázquez, además, señala que la consolidación solicitada por el Estado no puede estar basada en la existencia de una supuesta cuestión común de derecho entre los pleitos, porque en ninguno de ellos existe necesidad de adjudicar cuestión de derecho alguna en relación a la ilegalidad de la práctica de levantar expedientes; ello en vista de que la misma ya fue adjudicada por

este Tribunal en *Noriega v. Gobernador*, 130 D.P.R. 919 (1992).([12])

Los demandantes, en los tres (3) casos consolidados en el antiguo Tribunal Superior, Sala de Aguadilla, aducen que las acciones radicadas en Aguadilla no deben ser consolidadas con el pleito de *Rosalí Fernández Pola v. E.L.A.*, ante, porque, entre otras razones: (1) los casos de Aguadilla están mucho más avanzados que los de otros tribunales;([13]) (2) no existe riesgo de que se produzca prueba duplicativa;([14]) (3) la consolidación produciría una leve economía para el Estado, pero tendría un alto costo para cada litigante,([15]) lo cual a su vez, desalentaría a los demandantes de ejercer su derecho a reclamar, produciendo un efecto de enfriamiento (*chilling effect*) en el interés de éstos en solicitar un justo remedio por los agravios padecidos; (4) nin-

---

([12]) En *Noriega v. Gobernador*, 122 D.P.R. 650 (1988), este Tribunal confirmó la sentencia del tribunal de instancia que declaró la inconstitucionalidad de la práctica de levantar expedientes, carpetas, listas o ficheros de personas, agrupaciones y organizaciones, única y exclusivamente por razón de sus creencias políticas e ideológicas, sin tener prueba real que las vinculara con la comisión o intento de comisión de algún delito. Tal actuación, por parte del Estado, fue declarada contraria a los derechos de libertad de palabra, de asociación y de intimidad y una afrenta a la dignidad del ser humano, razón por la cual el tribunal de instancia dictó una orden de *injunction* permanente contra el Gobernador de Puerto Rico, el Superintendente de la Policía y sus sucesores para que cesaran de inmediato la práctica ilegal antes descrita. A su vez, con el propósito de hacer viable la entrega de los expedientes a las personas y entidades concernidas, se estableció unas guías o reglas detalladas para su distribución.

Posteriormente, en *Noriega v. Gobernador*, 130 D.P.R. 919 (1992), se resolvió que el Estado no podía levantar los privilegios establecidos por las Reglas de Evidencia para proteger actuaciones *ilegales* y que la responsabilidad civil por dicha práctica ilegal recae de forma total y única sobre éste.

([13]) A pesar de haberse radicado las demandas hace poco tiempo, la parte demandante alega que ya se ha discutido y resuelto una Moción de Consolidación, una Moción para Desestimar y se ha calendarizado el descubrimiento de prueba. También se ha concedido término para contestar la demanda. Por otro lado, al cabo de más de tres (3) años de su radicación, todavía no se ha certificado la clase en el pleito de *Rosalí Fernández Pola v. E.L.A.*

([14]) Según indican, esto no ocurrirá "porque el Estado utilizó agentes de la División de Inteligencia del área de Mayagüez y Aguadilla y porque los daños de los demandantes son individuales, personalísimos y no pueden ser igualados o uniformados con los demandantes de San Juan".

([15]) Los demandantes recurridos alegan que la consolidación de sus casos con un pleito que se ventila en San Juan, "aumentaría para ellos los costos de viaje, peaje, alimentación, riesgo a la propiedad vehicular y personal e incluso a su integridad personal".

guna de las reclamaciones de los casos de Aguadilla es similar a la del caso *Rosalí Fernández Pola v. E.L.A.* ante; (5) no hay controversias similares en cuanto a los daños sufridos por cada uno de los demandantes, porque los demandantes de Aguadilla alegadamente "tienen muy poco en común con los demandantes del área metropolitana".([16])

---

([16]) Los daños alegados en la demanda enmendada radicada por Gilberto Maisonave Nieves, son los siguientes: (1) Que la conducta de la policía al crearle un expediente le violó sus derechos civiles garantizados por las Secs. 1, 2, 4, 6 y 8, Art. II, de la Carta de Derechos de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1; (2) "que los agentes Juan B. González (5656) y César Soto (7–1402) mediante culpa y negligencia, incluyeron en el expediente confidencial del señor Gilberto Maisonave Nieves *información falsa*, libelosa, no corroborada y obtenida de fuentes no fidedignas sin preocuparse de escudriñar la posible veracidad de dicha información y promovieron la persecución del demandante"; (3) que "a base de la información falsa recopilada en el expediente confidencial del demandante *se le persiguió* maliciosamente y sin causa alguna, se intervino con él innecesariamente, se le apresó abusivamente, se ocupó su propiedad y se atropelló su dignidad"; (4) que ha sufrido *daños morales*, angustias mentales, se menoscabó su honra, su buen nombre y su intimidad.

En la demanda enmendada radicada por Heriberto López Jiménez y otros, se hace las siguientes alegaciones generales de daños: (1) violaciones a los derechos civiles y estatutarios de los demandantes; (2) imputaciones difamatorias, falsas, libelosas y negligentes. En adición, cada demandante reclama compensación por daños específicos sufridos de forma individual y particular por cada uno de ellos. Estos pueden ser resumidos en los siguientes: (1) que la carpeta contiene información falsa, violando así su dignidad de ser humano; (2) que la investigación ilegal conducida por la Policía de Puerto Rico entre sus vecinos, familiares y compañeros de trabajo afectó su reputación, honra, estabilidad económica, relaciones de familia y dignidad de ser humano; (3) que a uno de los demandantes se le "cesó y separó de sus labores en la Policía de Puerto Rico" por ser independentista, lo cual le ocasionó daños morales y pérdida de ingresos; (4) que a otro de los demandantes se le trató de implicar en la comisión de actos delictivos; (5) que a otro de los demandantes se le negó admisión al cuerpo de la Policía de Puerto Rico, ello a pesar de alegadamente cumplir con los requisitos de admisión.

Por último, la demanda enmendada radicada en el caso *Gregory Carrasco y otros v. E.L.A.*, ante, contiene alegaciones generales de daños consistentes en que: (1) las imputaciones y aseveraciones en las carpetas, expedientes, etc. "son difamatorias, falsas, libelosas, engañosas y negligentes"; y que las violaciones a los derechos civiles de los demandantes les ocasionó daños y perjuicios, sufrimientos y angustias mentales. En particular contiene las alegaciones de daños específicos que resumimos a continuación: (1) uno de los demandantes alega que en su carpeta se recomienda su remoción de su empleo en la Autoridad de Carreteras, lo cual motivó que fuese perseguido, difamado y vigilado en su empleo y que se le negara aumento de sueldo por varios años; (2) otra demandante alega que como consecuencia de la investigación sobre ella y entrevistas conducidas a vecinos, amigos, familiares y compañeros de trabajo por la Policía, fue despedida de su empleo por el Alcalde de Aguadilla; (3) varios demandantes alegan que las investigaciones sobre su persona y las entrevistas de la Policía a amigos, vecinos y familiares les ocasionó "fricciones y choques sociales y familiares"; (4) los restantes demandantes alegan que la información que sobre ellos hay en sus respectivas carpetas es falsa, libelosa y negligente.

## IV

El texto de la vigente Regla 38.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) *es prácticamente idéntico* —por no decir igual— al de su contraparte federal, esto es, la Regla 42(a) Federal de Procedimiento Civil; razón por la cual la jurisprudencia federal interpretativa de la misma, y la doctrina, resulta *persuasiva* en nuestra jurisdicción. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 588 (1983). En vista a ello, examinamos brevemente la misma. La citada Regla 42(a) federal establece que:

> ... When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. 28 U.S.C. Ap.

En síntesis, la norma vigente en la jurisdicción federal, respecto a la consolidación de pleitos, es a los efectos de que para que se pueda ordenar la consolidación solicitada tienen que concurrir *dos* (2) requisitos, a saber: (1) que los pleitos cuya consolidación se solicita contengan "cuestiones comunes de hecho o de derecho", *In re Dearborn Marine Service Inc.*, 499 F.2d 263 (5to Cir. 1974), 9 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 2382 (1995), y (2) que dichos pleitos estén pendientes "ante el mismo distrito judicial", *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (1974), confirmado en 515 F.2d 505 (2do Cir. 1975), *Swindell-Dressler Corporation v. Dumbauld*, 308 F.2d 267, (3er Cir. 1962); *Anschell v. Sackheim*, 145 F. Supp. 447 (D.C. N.J. 1956); *Facen v. Royal Rotterdam Lloyd S.S. Co.*, 12 F.R.D. 443 (1952); *Federal Electric Products Co. v. Frank Adam Electric Co.*, 100 F. Supp. 8 (1951). Ausente cualquiera de estos requisitos, la solicitud de consolidación debe ser denegada. *Wright and Miller*, ante.

Como podrá notarse, el segundo de los requisitos —que los pleitos estén "ante el mismo distrito judicial"— *no* surge expresamente de la transcrita Regla 42(a) federal. Esta lo que exige es que los pleitos estén *pending before the court*, esto es, "ante el tribunal". Los tribunales federales, *sin embargo*, han interpretado que esta frase significa, repetimos, que los casos a consolidarse estén pendientes "ante el mismo distrito judicial". *Wright and Miller*, ante, págs. 257–258; interpretación que resulta perfectamente lógica en vista del hecho de que los tribunales federales de primera instancia *(District Courts) no* constituyen un solo distrito judicial. Véanse: 28 U.S.C. secs. 81–131; C.A. Wright, *The Law of Federal Courts*, 4ta ed., Minnesota, West Publishing Co., 1983, pág. 8.

Por otro lado, procede que señalemos que en la jurisdicción federal se ha resuelto que la decisión de conceder o denegar la solicitud de consolidación realizada por un tribunal de instancia federal *no* será alterada en apelación a menos que el tribunal apelativo determine que el de instancia incurrió en un claro abuso de discreción. Véanse: *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8vo Cir. 1990), *cert.* denegado, 112 S.Ct. 414 (1990); *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899 (4to Cir. 1983), *cert.* denegado, 464 U.S. 1040 (1984); *Molever v. Levenson*, 539 F.2d 996 (4to Cir. 1976), *cert.* denegado, 429 U.S. 1024 (1976); *Shumate & Co., Inc. v. National Ass'n of Sec. Deal., Inc.*, 509 F.2d 147 (5to Cir. 1975), *cert.* denegado, 423 U.S. 868 (1975).

A esos efectos, procede destacar que se ha resuelto que, en el ejercicio de esa discreción, el tribunal de instancia debe sopesar, de un lado, la economía de tiempo y esfuerzo que la consolidación produciría, y del otro, cualquier inconveniente, retraso o gasto que la consolidación pueda causar. *Wright and Miller*, ante, Sec. 2383.([17]) La doctrina

---

([17]) Véanse: *Bernardi v. City of Scranton*, ante; *Arroyo v. Chardón*, ante; *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal.

también señala que el costo adicional de litigación, que la consolidación pueda significar para las partes, es un factor a considerarse al determinar si procede o no la consolidación, aunque no es necesariamente un factor conclusivo. *Wright and Miller*, ante, Sec. 2383, pág. 261; Véase *Shultz v. Manufacturers & Traders Trust Co.*, 29 F. Supp. 37 (W.D. N.Y. 1939).

De lo antes expuesto, claramente se desprende que para que en la jurisdicción federal proceda la consolidación, tienen que cumplirse, en primer lugar, los dos (2) requisitos antes señalados y, en segundo término, el tribunal, dentro de su discreción, deberá sopesar, de un lado, las ventajas que la consolidación produciría y, del otro, los posibles inconvenientes. En otras palabras, la petición de consolidación, aun cumpliéndose los dos (2) requisitos, puede ser denegada cuando a juicio del tribunal la misma causaría dilación,[18] confusión o perjuicio,[19] o si las controversias individuales predominan sobre las comunes.[20] Véase

---

1989); *United States v. Mottolo*, 605 F. Supp. 898 (N.D. H. 1985); *Bank of Montreal v. Eagle Associates*, 117 F.R.D. 530 (1987); *American Photocopy Equipment Co. v. Fair (Inc.)*, 35 F.R.D. 236, 237 (1963); *Bascom Launder Corp. v. Telecoin Corp.*, 15 F.R.D. 277 (1953).

[18] El hecho de que las distintas acciones a consolidarse se encuentren en distintas etapas del procedimiento judicial no impide su consolidación. *Monzo v. American Airlines, Inc.*, 94 F.R.D. 672 (1982); *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298 (D. Del. 1981). Sin embargo, los tribunales pueden hacer uso de su discreción para denegar la consolidación de acciones cuando una de ellas está lista para juicio y la otra se encuentra en una etapa procesal anterior. Véanse: *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758 (5to Cir. 1989); *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329 (10mo Cir. 1987); *La Chemise Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164 (1973); *Prudential Ins. Co. of Am. v. Marine Nat. Exch. Bank*, 55 F.R.D. 436 (1972); *Transeastern Shipping Corp. v. India Supply Mission*, 53 F.R.D. 204 (1971); *Borup v. National Airlines*, 159 F. Supp. 807 (S.D. N.Y. 1956).

[19] Véanse: *Seguro de Servicio de Salud v. McAuto Systems*, 878 F.2d 5 (1er Cir. 1989); *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8vo Cir. 1990), cert. denegado, 112 S.Ct.414 (1990); *Henderson v. National R.R. Passenger Corp.*, 118 F.R.D. 440 (1987); *Schacht v. Javits*, 53 F.R.D. 321 (1971).

[20] La consolidación puede proceder aun cuando, además de existir cuestiones comunes entre los casos a consolidar, también existan cuestiones diferentes entre ellos. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11mo Cir. 1985). Sin embargo, los tribunales pueden negarse a consolidar cuando a su juicio las cuestiones individuales predominen sobre las comunes. Véase *Henderson v. National R.R. Passenger Corp.*, ante.

*Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal. 1989).

## V

Nuestras Reglas de Procedimiento Civil tienen como principio rector la consecución de soluciones justas, rápidas y económicas en la tramitación de las causas de acción que se radican ante nuestros tribunales. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283, 288 (1988). Con el propósito de fomentar el cumplimiento con este principio, la Regla 38.1 de Procedimiento Civil, ante, dispone que:

> Cuando estén pendientes ante *el* tribunal pleitos *que envuelvan cuestiones comunes de hechos o de derecho,* éste podrá ordenar la celebración de una sola vista o juicio de cualquiera o de todas las cuestiones litigiosas envueltas en dichos pleitos; *podrá ordenar que todos los pleitos sean consolidados;* y podrá, a este respecto, dictar aquellas órdenes que tiendan a evitar gastos innecesarios o dilación. (Énfasis suplido.)

La consolidación de acciones, bajo la transcrita Regla 38.1, ante, permite a los tribunales mantener un mayor control de la litigación y utilizar más eficientemente los recursos humanos y económicos de nuestro sistema de administración de la justicia. Es por ello que hemos expresado que la consolidación sirve a los tribunales de útil herramienta para evitar la multiplicidad de pleitos y para adjudicar, en una sola causa, las distintas reclamaciones de las partes cuando la naturaleza de las acciones lo permiten. *López Valdés v. Tribunal Superior*, 96 D.P.R. 779, 792 (1968).

Procede que se señale que en nuestra jurisdicción se ha reconocido que, para que proceda una solicitud de consolidación bajo la citada Regla 38.1, deben concurrir los dos (2) requisitos antes mencionados, esto es: (1) que los pleitos estén pendientes ante el *mismo* tribunal y (2) que éstos

contengan cuestiones comunes de hecho o de derecho. Véase J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, Cap. VI, pág. 199. Este Tribunal ha enfatizado el hecho de que, aun cumpliéndose con los mencionados dos (2) requisitos, los tribunales de instancia tienen *amplia discreción* para decidir si la consolidación procede o no. *Granados v. Rodríguez Estrada II,* 124 D.P.R. 593 (1989).

*Ahora bien,* procede que se destaque el hecho de que, como surge de una somera lectura de las disposiciones de la transcrita Regla 38.1, dicha disposición reglamentaria —al igual que su contraparte federal— *no* exige, de manera expresa, que se trate del *mismo* tribunal. La Regla 38.1, ante, habla de casos "pendientes ante *el* tribunal". *¿Procede que hagamos la misma interpretación que ha hecho el foro federal?* En relación a la contestación de dicha interrogante cobra importancia el hecho de que, con la aprobación de la Constitución de Puerto Rico, el 25 de julio de 1952, se instituyó en nuestra Isla un *sistema judicial unificado* en lo concerniente a jurisdicción, funcionamiento y administración. Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1.[21] Véanse: Clark y Rodgers, *The New Judiciary Act of Puerto Rico: A Definite Court Reorganization*, 61 Yale L.J., 1147 (1952); M.A. Velázquez Rivera, *Jurisdicción y competencia de los tribunales de Puerto Rico*, 48 Rev. Jur. U.P.R. 27 (1979); J. Trías Monge, *El Sistema Judicial de Puerto Rico*, Ed. Universitaria, 1978.

Por lo tanto, para efectos de *jurisdicción,*[22] nuestros

---

[21] La referida disposición constitucional lee:

"Los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización." Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 355.

[22] El concepto "jurisdicción" significa el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Gearheart v. Haskell*, 87 D.P.R. 57, 61 (1963). En otras palabras, la *jurisdicción* es la potestad para administrar justicia de que están investidos los jueces y la cual emana directamente de la Constitución y de la Ley de la Judicatura. Véase *Ex Parte Bou*, 7 D.P.R. 132, 133 (1904).

tribunales constituyen un solo distrito judicial, sobre el cual un sólo tribunal, el Tribunal General de Justicia —compuesto por el Tribunal Supremo, el Tribunal de Circuito de Apelaciones y por el Tribunal de Primera Instancia— ejerce su poder y autoridad.[23] Sin embargo, nuestros tribunales de instancia ejercen su jurisdicción conforme a unas normas de *competencia*[24] que le son asignadas por ley. Art. V, Sec. 2, Const. E.L.A., ante. Conforme a estas normas, el Tribunal de Primera Instancia *actualmente* se compone de un sólo tribunal con distinta *competencia* sobre la materia y cuantía,[25] el cual está a su vez dividido en varias Salas con distinta *competencia* por razón de área geográfica. Véanse: Arts. 5.001, 5.003, 5.005 y 9.001 de la Ley Núm. 1 de 28 de julio de 1994 (4 L.P.R.A. secs. 22m, 22o, 22q y 23c).

Con el propósito de evitar el caos a que, inevitablemente, llevaría el ejercicio desorganizado de la jurisdicción de nuestros tribunales de instancia, resulta necesario que los casos se ventilen en la sala con competencia para ello. Véanse: *Aetna Ins. Co. v. Tribunal Superior*, 103 D.P.R. 480, 483 (1975); *Longoria v. Tribunal Superior*, 102 D.P.R.

---

[23] Con el propósito de instrumentar el mandato constitucional, el Art. 2.001 de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22C) dispone:

"El poder judicial de Puerto Rico constituirá un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración. Estará compuesto por el Tribunal Supremo como tribunal de última instancia, el Tribunal de Circuito de Apelaciones como tribunal intermedio, y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia.

"*El Estado Libre Asociado de Puerto Rico está constituido en un sólo distrito judicial, sobre todo el cual el Tribunal General de Justicia ejercerá su poder y autoridad.*" (Énfasis suplido.)

[24] El concepto "competencia" ha sido definido como la manera en que se organiza o se canaliza el ejercicio de la jurisdicción que tiene un tribunal. Véanse: M.A. Velázquez Rivera, *Jurisdicción y competencia de los tribunales de Puerto Rico*, 48 Rev. Jur. U.P.R. 27, 29 (1979); *Banco de Ponce v. Iriarte*, 60 D.P.R. 72 (1942).

[25] Bajo la anterior Ley de la Judicatura, el Tribunal de Primera Instancia se componía de tres (3) secciones; a saber, Tribunal Superior, Tribunal de Distrito y Tribunal Municipal. El Tribunal de Distrito quedará abolido paulatinamente en los próximos ocho (8) años a partir de la vigencia de la Ley de la Judicatura de Puerto Rico de 1994. Dicho tribunal, permanecerá durante el proceso de abolición como una subsección del Tribunal de Primera Instancia consolidado, según dispone el Art. 9.001 de la mencionada ley, 4 L.P.R.A. sec. 236.

267, 269 (1974); *Colón v. Tribunal Superior*, 97 D.P.R. 106, 122–123 (1969). De lo contrario, tendríamos la unificación del sistema para fines de jurisdicción, pero no lograríamos la más eficiente organización para fines de funcionamiento. Véanse: *Pueblo v. De Jesús Gómez*, 100 D.P.R. 629, 635–636 (1972); *Colón v. Tribunal Superior*, ante. *En vista a ello, y no obstante la existencia de un solo tribunal unificado, encontramos aconsejable adoptar en nuestra jurisdicción el requisito establecido por la jurisprudencia federal conforme al cual, para que proceda una solicitud de consolidación, los casos a consolidarse deben estar pendientes ante una misma sala o región.*[26] Adaptada a nuestras circunstancias particulares, *el referido requisito significará que los casos a ser consolidados deberán estar pendientes ante, o bajo la competencia, de una misma Sala del Tribunal de Primera Instancia.*

Somos del criterio que resolver lo contrario significaría, en primer lugar, la eliminación —de un plumazo y en virtud de una disposición constitucional de tipo general— del requisito a los efectos de que los pleitos a consolidarse deben, de ordinario, estar pendientes ante el *"mismo tribunal"*. No creemos que esa fuera la intención ni de este Tribunal ni de la Asamblea Legislativa, al promulgar y adoptar las Reglas de Procedimiento Civil, *por primera vez*, en el año de 1958, en específico la citada Regla 38.1. Como expresáramos anteriormente, la terminología de la Regla 38.1, ante, es prácticamente igual, por no decir idéntica, a la de la Regla 42(a) federal, ante. Somos de la opinión que no debe haber duda sobre el hecho de que el Comité Consultivo de las Reglas de Procedimiento Civil, compuesto el mismo por distinguidos miembros de nuestra profesión, tenían pleno conocimiento de la interpretación de que había sido objeto la Regla 42(a) federal, ante, por

---

[26] El Art. 5.005 de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22q) establece las regiones judiciales que comprenden las Salas del Tribunal de Primera Instancia.

parte del foro judicial federal, y su "aplicabilidad" en nuestra jurisdicción. De no ser así, la terminología de la Regla 38.1 de Procedimiento Civil, ante, al ser adaptada del sistema federal, hubiera sido seguramente variada o "enmendada" por el referido Comité Consultivo ya que la terminología federal, en este aspecto, resultaría superflua o innecesaria.

Por otro lado, debe señalarse que una interpretación contraria a la que hoy sugerimos daría al traste con la razón de ser de la norma sobre competencia, vigente en nuestra jurisdicción, la cual tiene el propósito de promover el ordenado ejercicio de la jurisdicción de los tribunales. *Además, ello significaría, con toda probabilidad, un grave perjuicio para la ciudadanía en general.* Ello así en vista del hecho de que, no importa cuán distante estuviera el lugar de residencia de un ciudadano reclamante, perteneciente a una sala o región judicial en particular, su pleito podría ser consolidado con otro radicado en una lejana, y distinta, sala o región judicial; esto es, los factores sobre gastos, costo, e inconveniencias que se le pudieran causar a las partes por razón de la consolidación se convertirían, prácticamente, en académicos. No podemos, en fin, estar de acuerdo con dicha interpretación.

*Somos del criterio, por lo tanto, que para que proceda una solicitud de consolidación bajo la Regla 38.1 de Procedimiento Civil, ante, deberán cumplirse, de ordinario, los siguientes dos (2) requisitos: (1) que los casos a consolidarse estén pendientes ante una misma Sala del Tribunal de Primera Instancia; y (2) que exista entre ellos cuestiones comunes de hecho o de derecho.*

## VI

¿Se cumple, en los casos de epígrafe, con los dos (2) requisitos que, conforme anteriormente hemos expresado, exige la Regla 38.1 de Procedimiento Civil, ante, para que

se pueda ordenar la consolidación de varias acciones? Veamos.

Los pleitos de epígrafe fueron *correctamente* radicados, conforme la norma sobre competencia, ante las Salas de Aibonito y Aguadilla —en el caso de *Rosalí Fernández Pola v. E.L.A.*, en la Sala de San Juan— del antiguo Tribunal Superior de Puerto Rico, hoy Tribunal de Primera Instancia. Esto es, y dicho de otra forma, los pleitos fueron radicados, y están ventilándose, ante *distintas Salas* del Tribunal de Primera Instancia. En consecuencia, y conforme la interpretación que hemos realizado de las disposiciones de la Regla 38.1 de Procedimiento Civil, ante, *no* se cumple con el primero de los dos (2) requisitos exigidos por la mencionada disposición reglamentaria.[27]

En relación con el segundo de los requisitos exigidos por la Regla 38.1 de Procedimiento Civil, ante, esto es, con el de que los pleitos planteen "cuestiones comunes de hecho o

---

[27] De todas maneras, la solicitud a ser radicada por el Estado ante las Salas de Aibonito y Aguadilla del antiguo Tribunal Superior realmente no era una de consolidación al amparo de las disposiciones de la Regla 38.1 de Procedimiento Civil, ante. La solicitud, correcta en derecho, a radicarse por el Estado era una de traslado bajo las disposiciones de la Regla 3.5(b) de Procedimiento Civil, 4 L.P.R.A. Ap. III.

Por tratarse de distintas Salas del Tribunal de Primera Instancia, cada Sala *está limitada*, en el ejercicio de la jurisdicción de los Tribunales de Puerto Rico, *por la norma de competencia que establece nuestro ordenamiento jurídico*.

De entender, o haber entendido, los magistrados que presiden las Salas de Aibonito y Aguadilla que, por existir cuestiones comunes de hecho o de derecho entre los casos, era aconsejable que una sola Sala entendiera en todos los casos, dichos magistrados sólo hubieran podido ordenar, a lo sumo, el *traslado* de los pleitos, ante ellos radicados, a la Sala de San Juan; esto, repetimos, bajo las disposiciones de la Regla 3.5(b) de Procedimiento Civil, ante. Ello en vista de que dichos magistrados no tienen "facultad" para actuar sobre el pleito correctamente radicado, y pendiente, ante la Sala de San Juan. Ello le corresponde al magistrado de la Sala de San Juan que preside sobre el referido caso; magistrado que, una vez trasladados los casos a la Sala de San Juan, sería el que decidiría si procede, o no, la consolidación de todos los pleitos.

En relación a la concesión de una solicitud de traslado, bajo la Regla 3.5(b) de Procedimiento Civil, ante —lo cual, en el presente caso, resulta cuestionable— es aplicable la norma general que establece que "de ordinario, este Tribunal no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta.*, 117 D.P.R. 729, 745 (1986). Véase *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 D.P.R. 170 (1992).

de derecho", como correctamente sostiene el demandante Vives Vázquez, las cuestiones principales de derecho, "comunes" entre su caso y los demás pleitos radicados en las otras Salas del Tribunal de Primera Instancia, *ya fueron resueltas y adjudicadas por este Tribunal*, esto es, en los *dos* (2) casos de *Noriega v. Gobernador*, ante, de 1988 y de 1992.

Recordaremos que, en el primero de ellos, resolvimos que era inconstitucional la práctica del Estado de levantar, actualizar y preservar "carpetas o listas" de personas y organizaciones debido, única y exclusivamente a las creencias o tendencias políticas e ideológicas de éstos y que, a dichos individuos y organizaciones, había que proveerle un cauce procesal para que pudieran reclamar los daños que pudieran haber recibido como consecuencia de dicha práctica. En la segunda de dichas decisiones, resolvimos que, en relación a esos daños, el Estado era el único responsable.

De manera, pues, que conforme correctamente sostiene Vives Vázquez lo único restante, prácticamente, lo es la dilucidación, por las mencionadas Salas del antiguo Tribunal Superior, de los *hechos específicos* de cada caso en particular; *cuestiones de hechos que, obviamente, son distintas en cada caso*, razón por la cual no existe fundamento jurídico alguno que justifique una orden para la consolidación de dichos casos.

Por otro lado, somos del criterio que, para la adjudicación, y apreciación, de unos hechos —distintos los unos de los otros— *no* se requiere la designación de un "juez itinerante", el cual, dicho sea de paso, *no* poseerá mayores atributos que cualesquiera de los demás distinguidos magistrados que laboran, día a día, en las distintas regiones judiciales del País. Dicha designación, a nuestra manera de ver las cosas, desembocará en la erogación innecesaria de fondos públicos y en la tardanza en la solución final de los casos.

En vista de lo antes expresado, nos parece forzosa la conclusión a los efectos de que *no* erraron las antiguas Salas de Aibonito y de Aguadilla del antiguo Tribunal Superior al negarse a trasladar y/o consolidar los casos radicados en dichas Salas con el caso radicado ante la antigua Sala de San Juan del referido Tribunal Superior. En consecuencia, debería dictarse, *sin más*, sentencia *confirmatoria* de las resoluciones emitidas, el 21 de junio y el 15 de septiembre de 1993, por las Salas de Aibonito y Aguadilla, respectivamente, del antiguo Tribunal Superior de Puerto Rico.