ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| PRÓSPERO TIRES EXPORT, INC., JOSÉ ÁNGEL RODRÍGUEZ SÁNCHEZ, AMARYLIS FONTÁNEZ ROBERTO y la Sociedad Legal de Bienes Gananciales Compuesta por Ambos<br><br>Demandantes- Apelantes<br><br>V.<br><br>EDGARDO VELÁZQUEZ SÁNCHEZ, JANE DOE y la Sociedad Legal de Bienes Gananciales compuesta por Ambos, MULTI RECYCLING & MANUFACTURING CORP., COMPAÑÍA ASEGURADORA ABC, RESOURCE RECYCLING LLC, ROSTAM PIRASTEH, MINOUH PIRASTEH y la Sociedad Legal de Bienes Gananciales Compuesta por Ambos, GRETCHEN GRONAU SANTIAGO, JOHN DOE y la Sociedad de Bienes Gananciales compuesta por Ambos<br><br>Demandados- Apelados<br><br>ROSTAM PIRASTEH, MINOUH PIRASTEH y la Sociedad Legal de Bienes Gananciales Compuesta por Ambos; CARIBE VIVA RECYCLING, INC.; EDGARDO VELÁZQUEZ SÁNCHEZ Y MULTI RECYCLING & MANUFACTURING CORP.<br><br>Reconvinentes | KLAN202300318 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: TJ2019CV00041 (409)<br><br>SOBRE: Incumplimiento de Contrato; Daños y Perjuicios, Disolución de Corporación, Sindicatura, Injunction Preliminar, Injunction Permanente, Cumplimiento de Específico de Contrato |

Panel integrado por su presidente el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparecen Próspero Tires Export, Inc., José Ángel Rodríguez Sánchez, Amarylis Fontánez Roberto y la

Sociedad Legal de Gananciales compuesta por ambos (apelantes) mediante el presente recurso de *Apelación* en el que solicitan la revocación de una *Sentencia* del Tribunal de Primera Instancia, Sala de Trujillo Alto (TPI) emitida el 24 de abril de 2020, notificada tres días después. En su dictamen, el TPI desestimó la *Demanda Enmendada* que los apelantes promovieron en contra de Edgardo Velázquez Sánchez y su esposa; Multi Recycling & Manufacturing Corp.; Resource Recycling Corp.; Rostam Pirasteh y su esposa; y Gretchen Gronau Santiago y su esposo (apelados). En el pleito, el matrimonio Pirasteh, el Sr. Velázquez Sánchez, Caribe Viva Recycling, Inc., y Multi Recycling Manufacturing Corp. figuraron como reconvinentes tras presentar contrarreclamaciones a los apelantes.

-I-

Los hechos de este caso ocurrieron en el contexto de una relación de negocios habida entre las partes, la cual también ha provocado otros pleitos. Por este motivo y teniendo en mente el *ratio decidendi* del TPI en la *Sentencia* impugnada, realizamos una relación del trámite procesal conjunta para lograr la mejor comprensión del recurso y de lo que hoy resolvemos.

El 25 de enero de 2019, los apelantes instaron una *Demanda* en contra de la Sra. Gretchen Gronau Santiago, su esposo, la Sociedad Legal de Gananciales compuesta por ambos y una aseguradora.[1] Esta reclamación se presentó en la Sala de Bayamón del TPI y recibió la nomenclatura GB2019CV00087. Las causas de acción de dicha *Demanda* fueron: (1) incumplimiento de contrato;

---

[1] Apéndice de la Apelación, págs. 310-323.

(2) conflicto de intereses y violación al deber de fiducia y lealtad; (3) mala práctica de la profesión de Contador Público Autorizado (CPA) y negligencia en el cumplimiento del deber profesional; (4) perjurio, conspiración para defraudar, fraude y engaño; (5) interferencia torticera con relaciones contractuales; y (6) libelo, calumnia, difamación y daños y perjuicios. En esencia, el recurso le imputó a la Sra. Gronau Santiago que, mientras fungía del 2014 al 2018 como la CPA de los apelantes, trabajó para beneficiar tanto al Sr. Pirasteh como a sí misma. Los actos fueron catalogados por la parte como esquemas contables fraudulentos bajo la instrucción del Sr. Pirasteh. Estos, a su vez, incluyeron: (1) sueldos por trabajo no realizado; (2) gastos reembolsables sin aprobación; (3) préstamos a intereses excesivos; (4) desembolsos de intereses o pagos al principal a la mera solicitud del Sr. Pirasteh, sin tomar en cuenta las necesidades de dinero de Próspero Tire Export (PTE); (5) negocios con terceros valiéndose del dinero, contactos o recursos de PTE; (6) creación de entes paralelos competitivos para erosionar los negocios de PTE; (7) apropiación ilegal de dinero de PTE; (8) encubrimiento mediante perjurio y sustracción ilegal de documentos. Según la reclamación, todo lo anterior ocurrió en común acuerdo con el Sr. Pirasteh.

El 30 de enero de 2019, los apelantes radicaron una *Demanda* contra el Sr. Edgardo Velázquez Sánchez, su esposa, la Sociedad Legal de Gananciales compuesta por ambos y Multi Recycling & Manufacturing Corp (MRMC).[2]

---

[2] *Id.* en las págs. 1-12.

Este pleito se instó en la Sala de Trujillo Alto del TPI, recibió la nomenclatura TJ2019CV00041 y, una vez culminó, desembocó en el recurso de epígrafe. En esta ocasión, las causas de acción por las cuales los apelantes reclamaron fueron: (1) sentencia declaratoria; (2) incumplimiento de contrato; (3) conspiración para defraudar, fraude y engaño; y (4) cobro de dinero, enriquecimiento injusto, y daños y perjuicios. En síntesis, el pleito alegó que el Sr. Velázquez Sánchez, en conjunto con el Sr. Pirasteh, logró obtener mediante engaño un préstamo de $60,000, provisto por PTE, para la compra del 50% de las acciones de MRMC bajo el pretexto de que la adquisición se haría a nombre de él, pero luego las acciones se transferirían al Sr. Rodríguez Sánchez o a PTE. Sin embargo, el recurso sostuvo que el Sr. Velázquez Sánchez nunca remitió las acciones a PTE y, por el contrario, se convirtió en el dueño del total de MRMC. Además, le imputó asociarse con el Sr. Pirasteh y la Sra. Gronau Santiago para extraer cantidades adicionales de dinero ascendentes a $575,000, así como para adquirir propiedades, construir y realizar mejoras a favor de MRMC. Así, arguyó que el Sr. Velázquez Sánchez incumplió su obligación contractual como mandatario de PTE en la compra y transferencia de las referidas acciones; infringió su obligación de devolver $548,746.40; conspiró y cometió fraude para engañar al apelante y obtener el referido préstamo y la pérdida del dinero; y, en consecuencia, les adeudaba a los apelantes un total de $567,496.40 más los $60,000 en concepto de préstamo. Como remedio, los apelantes reclamaron: (1) que se declarara a PTE como dueño del 50% de MRMC; (2) que se condenara al Sr. Velázquez Sánchez a pagar no

menos de $1,000,000 en daños y perjuicios; y (3) que se les ordenara a pagar $673,500, más costas, gastos y honorarios de abogados.

El 19 de febrero de 2019, los apelantes presentaron una *Demanda Enmendada* con el fin de incluir como demandados a Resource Recycling LLC, al Sr. Rostam Pirasteh, su esposa Minouh Pirasteh, la Sra. Gronau Santiago, su esposo y la Sociedad Legal de Gananciales compuesta por ambos, y expandir las reclamaciones en su contra.[3] Cónsono con la adición, también sumaron varias alegaciones y causas de acción en contra de estos nuevos demandados. En específico, a la tercera causa de acción se le añadió conflicto de intereses y violación al deber de fiducia y lealtad, mientras que se agregó el fraude de acreedores como una quinta causa. En resumen, al Sr. Pirasteh y a la Sra. Gronau Santiago se les imputó que ejecutaron un esquema, junto al Sr. Velázquez Sánchez, para adquirir terrenos de MRMC mediante un préstamo de $13,750 provisto por PTE, escondiendo el verdadero propósito y apropiándose de la propiedad a favor del Sr. Pirasteh. También, se incluyó a los tres en los esfuerzos para obtener cerca de $600,000 a título de préstamo para invertirlos en MRMC. En total, se alegó la existencia de tres sumas apropiadas: $548,746.40 en gastos que favorecieron a MRMC, $13,750 para la adquisición de un terreno y $60,015 para la compra del 50% de las acciones corporativas de MRMC. Por último, alegó que los tres crearon Resource Recylcing para transferir todos los activos y las licencias de MRMC y, de esta forma, evitar que los apelantes cobraran sus acreencias y derechos

---

[3] *Id.* en las págs. 12-27.

sobre esa compañía. Por otra parte, los remedios solicitados quedaron modificados de la siguiente manera: (1) que se declarara a PTE como dueño del 50% de MRMC o de Resource Recycling; (2) que se condenara a los apelados al pago solidario de $622,511.40; (3) que se condenara a los apelados al pago solidario de una suma adicional de $100,000 a favor del Sr. Rodríguez Sánchez; y (4) que se anularan todas las transferencias de derechos, activos y propiedades de MRMC a Resource Recycling o, de no ser posible, que se condene a los apelados al pago solidario de $5,000,000, más costas, gastos y honorarios de abogados.

El 21 de mayo de 2019, los apelados contestaron la *Demanda Enmendada*[4] y, a su vez, presentaron una Reconvención.[5] En la *Contestación a la demanda enmendada*, además de negar la mayoría de las alegaciones, plantearon que el Sr. Pirasteh y el Sr. Velázquez Sánchez establecieron una empresa común con el Sr. Rodríguez Sánchez y que cumplieron con todas sus obligaciones como socios o empleados de PTE. Entretanto, en la *Reconvención,* arguyeron que, contrario a las alegaciones, era PTE y los apelantes quienes le debían al Sr. Pirasteh por las inversiones que este hizo para salvar la corporación, las cuales ascendían a más de $1,000,000. Los apelados llamaron la atención a que, debido a esa controversia, promovieron en el pasado un litigio en la Sala de Carolina del TPI bajo la nomenclatura CA2018CV02635, el cual concluyó con un *Acuerdo de Transacción*. Según el acuerdo, autorizado en la *Sentencia* del TPI en ese caso, el Sr. Rodríguez

---

[4] *Id*. en las págs. 49-59.
[5] *Id*. en las págs. 60-100.

Sánchez y PTE le pagarían al Sr. Pirasteh un total de $800,000 y también renunciarían a cualquier reclamación que tuvieran en contra de este como resultado de sus relaciones de negocios.[6] Conforme a la *Reconvención*, el Acuerdo fue incumplido y, por lo tanto, procedía: (1) declarar dicho acuerdo rescindido, relevando a las partes de su cumplimiento y ordenando la devolución de las contraprestaciones; (2) ordenar el cumplimiento específico de uno de los acuerdos previos entre las partes y la transferencia de las acciones de PTE y sus activos a favor de MRMC; (3) ordenar el pago de todos los daños sufridos; y (4) la declaración de reconocimiento de los derechos del Sr. Pirasteh y el Sr. Velázquez Sánchez como codueños mayoritarios de PTE.

El 7 de agosto de 2019, la Sra. Gronau Santiago sometió una *Solicitud de consolidación y traslado*[7] en la que arguyó que procedía la consolidación del TJ2019CV00041 con el GB2019CV0087. La petición también se le hizo al TPI en el GB2019CV0087, puesto que a este le correspondía atender la cuestión por tratarse del caso de mayor antigüedad.

El 11 de octubre de 2019, los apelantes solicitaron la desestimación parcial de la reconvención.[8]

El 4 de noviembre de 2019, en el GB2019CV0087, el TPI emitió una *Resolución* en la que determinó que no procedía la consolidación de los pleitos.[9]

---

[6] *Véase Sentencia* del TPI del 5 de diciembre de 2018 en el CA2018CV02635, obtenido del Sistema Unificado de Manejo y Administración de Casos (SUMAC), CA2018CV02635, Entrada Núm. 79.
[7] *Id*. en las págs. 122-133.
[8] *Id*. en las págs. 141-153.
[9] Este documento no fue incluido por los apelantes en el Apéndice de la Apelación. El mismo fue sustraído del SUMAC, GB2019CV0087, Entrada Núm. 60.

El 28 de febrero de 2020, en el TJ2019CV00041, el TPI expresó mediante una *Orden* que, aunque no se oponía al traslado y la consolidación del pleito con el GB2019CV0087, la solicitud tenía que hacerse en el otro caso por ser más antiguo.[10]

Después de varios trámites, los cuales incluyeron el señalamiento de una vista que no se celebró por el estado de emergencia del COVID-19, el 24 de abril de 2020, en el TJ2019CV00041, el TPI dictó una *Sentencia* en la que desestimó tanto el pleito promovido por los apelantes como la reconvención de los apelados.[11] El dictamen fue notificado el 27 de abril de 2020.

Inconformes, ambas partes solicitaron que el foro inferior reconsiderara la determinación, pero el 31 de agosto de 2020, el TPI emitió una *Resolución* en la que rechazó únicamente la petición de los apelados.[12] En cambio, quedó pendiente la petición de los apelantes.

El 24 de agosto de 2021, los apelantes comparecieron ante esta Curia bajo el KLCE202101021 mediante una *Petición de certiorari* en la que sostuvieron que el TPI erró al no atender su solicitud de reconsideración.[13] De igual manera, sometieron una *Moción de desestimación.*

El 18 de octubre de 2021, el Tribunal de Apelaciones dictó una *Sentencia* en el KLCE202101021 en la que expidió el *certiorari* solicitado, rechazó la *Moción de desestimación* de los apelantes y revocó la *Orden* del TPI del 9 de junio de 2021.[14] Así devolvió el pleito al foro

---

[10] Apéndice de la Apelación, pág. 260.
[11] *Id.* en las págs. 263-273.
[12] *Id.* en la pág. 354.
[13] *Id.* en las págs. 505-515.
[14] *Véase Sentencia* del Tribunal de Apelaciones en el KLCE202101021.

inferior para que resolviera la reconsideración solicitada por los apelantes.

Posteriormente, el 13 de marzo de 2023, los apelantes le solicitaron al TPI que resolviese la *Moción de reconsideración* pendiente, en conformidad con las órdenes del Tribunal de Apelaciones.[15]

El 14 de marzo de 2023, el TPI dictó una *Resolución*, notificada el mismo día, en la que declaró No Ha Lugar a la reconsideración solicitada por los apelantes.[16]

Inconformes, el 13 de abril de 2023, los apelantes comparecieron ante esta Curia mediante el presente recurso de *Apelación* en el que solicitan la revocación de la *Sentencia* del TPI del 24 de abril de 2020. En su escrito, le imputan al foro inferior la comisión del siguiente error:

> ERRÓ EL TPI AL DESESTIMAR *MOTU PROPRIO* LA DEMANDA ENMENDADA DE LOS APELANTES BASADO EN QUE LAS ALEGACIONES Y CAUSAS DE ACCIÓN DE ESTA YA SE ESTABAN LITIGANDO EN OTRO CASO, CUANDO LO CIERTO ES QUE EN AMBOS CASOS SE ALEGAN CAUSAS DE ACCIONES DIFERENTES Y CUANDO TAMBIÉN EXISTEN PARTES DIFERENTES EN CADA CASO.

Pasado el término provisto a los apelados para la presentación de su *Alegato* sin que estos sometieran escrito alguno, contamos con la sola comparecencia de los apelantes. Procedemos a resolver.

-II-

**A. Consolidación**

La Regla 1 de Procedimiento Civil establece que las Reglas serán interpretadas a fin de facilitar tanto el acceso a los tribunales como el manejo del proceso y de forma que garanticen la solución justa, rápida y

---

[15] *Id*. en las págs. 546-559
[16] *Id*. en las pág. 560.

económica de todo procedimiento.[17] Así, si bien se favorece que los casos se ventilen en sus méritos, las Reglas también dotan a los tribunales con diferentes herramientas para descongestionar el tráfico de casos que se ven en sus salas y, de esa forma, se descarten los pleitos que atrasan su proceder.[18] Una de esas herramientas es la consolidación de pleitos, la cual se rige por lo dispuesto en la Regla 38.1 de Procedimiento Civil.[19] En específico, dicha Regla dispone lo siguiente:

> Cuando estén pendientes ante el tribunal pleitos que comprendan cuestiones comunes de hechos o de derecho, el tribunal podrá ordenar la celebración de una sola vista o juicio de cualquiera o de todas las cuestiones litigiosas comprendidas en dichos pleitos, podrá ordenar que todos los pleitos sean consolidados y podrá dictar, a este respecto, aquellas órdenes que eviten gastos o dilaciones innecesarias.[20]

En sus expresiones sobre este vehículo procesal, el Tribunal Supremo ha dejado claro que su finalidad es "evitar la proliferación de acciones, lograr la economía procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente".[21] En este sentido, la consolidación se ha presentado como un mecanismo útil para los tribunales atender adecuadamente casos complejos,[22] y para darle concreción al principio rector de las Reglas de Procedimiento Civil de proveer la solución rápida, justa y económica de las controversias, según predica la mencionada Regla 1.[23]

---

[17] 32 LPRA Ap. V, R. 1.
[18] *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 720, 721 (2009).
[19] 32 LPRA Ap. V. R. 38.1.
[20] *Id.*
[21] *Vives Vázquez v. E.L.A.,* 142 DPR 117, 125 (1996) (citas omitidas).
[22] *Id.* en las págs. 137-138.
[23] *Hosp. San Fco., Inc. v. Sria. de Salud*, 144 DPR 586, 592 (1997).

Procesalmente, la consolidación de pleitos puede ser ordenada a solicitud de parte o *motu proprio* por el tribunal y podría utilizarse en pleitos ante foro apelativos.[24]

Ahora bien, de un análisis del texto de la Regla 38.1 se desprende que existen dos requisitos para que proceda una solicitud de consolidación: (1) que los casos presenten cuestiones comunes de hechos o de derecho y (2) que éstos estén pendientes ante el tribunal.[25]

Respecto al primer requisito, nuestro más alto foro ha expresado que la consolidación puede permitirse sin que sea necesario que la totalidad de las cuestiones de hecho y de derecho sean idénticas.[26] En ese respecto, las consideraciones particulares sobre alguno de los casos no impiden que se conceda la consolidación ni se requiere que las cuestiones de hechos o derechos sean comunes, sino que es suficiente que haya similitud entre una y otra.[27] De igual manera, si bien la identidad de partes en los pleitos a consolidar es un aspecto que puede pesar en la mente del juzgador, no es un requisito.[28] De ordinario, tampoco es un requisito indispensable que las acciones a consolidarse sean de la misma naturaleza.[29]

Sobre el segundo requisito, ha quedado establecido que "[c]uando estén pendientes ante el tribunal" únicamente requiere que los casos a consolidarse se hayan presentado y su trámite esté pendiente ante alguna sala del TPI.[30]

---

[24] *Domínguez Castro et al. v. ELA II*, 178 DPR 375, 417 (2010).
[25] *Id.* en la pág. 416.
[26] *Id.* en la pág. 417.
[27] *Id.*; *Vives Vázquez v. E.L.A.*, *supra* en la pág. 127.
[28] *Id.*
[29] *Vives Vázquez v. E.L.A.*, *supra* en la pág. 128.
[30] *Domínguez Castro et al. V. ELA II*, *supra* en la pág. 417.

Otros criterios que el juzgador deberá considerar ante una solicitud de consolidación son: (1) si la misma propende a una resolución justa, rápida y económica de las acciones; (2) si la consolidación tiende a evitar resultados inconsistentes entre las distintas disputas que presenten cuestiones similares de hechos o de derecho; (3) si existen perjuicios que la consolidación podría causarle a los litigantes o al tribunal y la posibilidad de que no se puedan evitar mediante órdenes cautelares, prestando especial atención a las circunstancias de cada caso; (4) la etapa procesal en la que se encuentran las acciones cuya consolidación se solicita; y (5) cuando sea pertinente, la complejidad de los casos.[31]

Ahora bien, una determinación judicial sobre una solicitud de consolidación, la cual ha sido efectuada tras un análisis ponderado de la totalidad de las circunstancias, merecerá gran deferencia por parte del tribunal que la revise.[32] Por tanto, será alterada únicamente cuando se haya omitido considerar algún factor importante o cuando se haya abusado de discreción.[33]

**B. El abuso de discreción**

En nuestra jurisdicción, se entiende la discreción como el poder que se tiene para decidir en una forma u otra, escoger entre uno o varios cursos de acción, y cuyo ejercicio está atado inexorablemente al concepto de la razonabilidad.[34] Nuestro Tribunal Supremo ha expresado diferentes maneras en las que se puede manifestar el

---

[31] *Vives Vázquez v. E.L.A.*, *supra* en las págs. 136-137.
[32] *Id.* en la pág. 142.
[33] *Id.; Hosp. San Fco., Inc. v. Sria. de Salud*, *supra* en la pág. 594.
[34] *García v. Asociación*, 165 DPR 311, 321 (2005) (citas omitidas).

abuso de este poder, entre las cuales se encuentran las siguientes: (1) cuando el juez no toma en cuenta e ignora un hecho material importante que no podía ser pasado por alto en su decisión, sin tener fundamento para ello; (2) cuando el juez le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, sin que haya justificación y fundamento alguno para ello; y (3) cuando, pese a tomar en cuenta todos los hechos materiales e importantes, descartando los irrelevantes, el juzgador livianamente sopesa y calibra los mismos.[35]

Desde el punto de vista apelativo, el Tribunal Supremo ha dejado claro que en nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador si este último ha incurrido en arbitrariedad o craso abuso de discreción.[36]

## C. Principios procesales

Los principios procesales se tratan del fundamento del proceso judicial y son el instrumento para la interpretación de las normas contenidas en las Reglas.[37] Entre estos, se pueden destacar dos: la economía procesal y la accesibilidad o derecho al proceso.[38] La primera de estas encarna el repetido adagio jurídico de que los procedimientos deben propender a una solución rápida de los pleitos. La segunda, consagra la máxima de que:

> "[t]oda persona tiene el derecho de acudir a los tribunales a presentar una reclamación u

---

[35] *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-212 (1990).
[36] *García v. Asociación*, *supra* en la pág. 322.
[37] Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, LexisNexis, 2017, pág. 5.
[38] *Id.* en las págs. 6 y 8.

oponerse a una interpuesta, y a realizar los actos procesales vinculados a la defensa de cada posición. La garantía del acceso implica la obtención de una decisión justa y ponderada, derivada de un proceso sin dilaciones y requerimientos gravosos, y al derecho a reclamar su ejecución".[39]

Con esto en mente, a lo largo y ancho de nuestra jurisdicción se puede apreciar cómo estas normas revisten los procesos civiles y, especialmente, los mecanismos para despachar los casos como la sentencia sumaria o la desestimación. Esta última se destaca por su pertinencia. La interpretación más amplia del término desestimación se refiere al pronunciamiento de un tribunal que le pone fin a la litigación promovida por el demandante.[40] Ahora bien, en nuestras Reglas de Procedimiento Civil, se pueden encontrar varias clases de desestimación, las cuales se diferencian por sus fundamentos. Entre los motivos para dictarla se encuentran: (1) la Regla 10.2 de Procedimiento Civil; (2) el que una parte no cumpla con una orden del tribunal, bajo la Regla 39.2; (3) el que no se presente prueba que justifique la reclamación de un remedio; y (4) que la parte demandante deje de proseguir el proceso, bajo el inciso (b) de la Regla 39.2.[41] Independientemente del fundamento, la desestimación de un pleito sin los elementos de juicio que ofrece una prueba que haga posible encontrar el derecho que le es aplicable constituye una acción drástica del tribunal, lo cual puede llevar a negar el derecho a ser oído a cabalidad.[42] De ahí que, por sus efectos, sea menester que los tribunales atemperen la aplicación de la desestimación

---

[39] *Id.* en la pág. 8
[40] *Id.* en la pág. 411.
[41] *Id.* en la pág. 412.
[42] *Id.* en la pág. 411.

frente a la política pública de que los casos se ventilen en sus méritos y que se recurra a la desestimación con perjuicio de forma excepcional.[43] De lo contrario, su uso desmesurado podría vulnerar el propósito de los tribunales de impartir justicia.[44]

## -III-

En la *Sentencia* impugnada mediante la presente *Apelación,* el TPI desestimó tanto la *Demanda* de los apelantes como la *Reconvención* de los apelados bajo el razonamiento jurídico de que procedía proteger la sana administración de la justicia y evitar posibles fallos contradictorios entre el pleito que produjo el presente recurso y el caso llevado por los apelantes en la Sala de San Juan. En más de una ocasión, el foro inferior permitió descubrir su opinión al expresar repetidamente que su preferencia era consolidar los casos, aunque la moción a esos efectos fue promovida en la Sala de la capital. En ese sentido, manifestó en su dictamen que "[s]omos de la opinión que acceder a la consolidación de este caso con el de San Juan era el mecanismo adecuado para atender todos los asuntos en una misma sala y evitar la posibilidad de incurrir en fallos contradictorios en cuestiones que son esencialmente similares e indivisibles".[45] En otro momento, encontró preciso puntualizar que "tanto en el caso de epígrafe como en el que se está ventilando en San Juan existen reclamaciones en común y resolver dichas cuestiones en diferentes foros podría impedir que se cumpla con la economía procesal que procuran nuestras Reglas de Procedimiento Civil, además que propendería a la bifurcación de

---

[43] *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 264 (2021).
[44] *Sánchez Rodríguez v. Adm. de Corrección*, *supra* en la pág. 721.
[45] Apéndice de la Apelación, pág. 272.

procedimientos".[46] Así, en aras de justificar su determinación, comparó las causas de acción de cada caso y concluyó que, a su juicio, ambas realizaban reclamaciones similares y respecto a las mismas partes. Esto último lo dedujo del permiso del TPI a la intervención del Sr. y la Sra. Pirasteh en el caso de San Juan. Por último, también desestimó la *Reconvención* por estimar que se trataba de una solicitud de relevo de sentencia.

Examinado el expediente, las demandas de cada caso y el trámite procesal del presente pleito, resulta preciso descartar la decisión desestimatoria del TPI. El siguiente axioma recoge el juicio de esta Curia: la desestimación *motu proprio* no puede proceder si los fundamentos jurídicos en los que se basó el foro inferior son incorrectos tanto en los hechos como en el derecho. Veamos.

En primer lugar, contrario al razonamiento del TPI, no procedía la consolidación de los pleitos comparados. Así lo determinó el foro con competencia para consolidar los casos, decisión que merece gran deferencia. Más aún, el caso que llevó al recurso de epígrafe es distinto al pleito promovido en el GB2019CV00087, puesto que hay diferencias entre las partes, las causas de acción y las etapas procesales en que se encuentran. En el GB2019CV00087, los apelantes instaron su *Demanda* en contra de la Sra. Gronau Santiago por: (1) incumplimiento de contrato; (2) conflicto de intereses y violación a su deber de fiducia y lealtad; (3) mala práctica de la profesión de CPA y negligencia en el

---

[46] *Id.* en la pág. 271.

cumplimiento del deber profesional; (4) perjurio, conspiración para defraudar, fraude y engaño; (5) interferencia torticera con relaciones contractuales; y (6) libelo, calumnia, difamación y daños y perjuicios. Al presente, ese pleito se encuentra señalado para *Conferencia con antelación a juicio* para el 18 de agosto de 2023.[47] También, cabe destacar que el TPI en este caso permitió únicamente la intervención del Sr. Pirasteh, su esposa y la Sociedad Legal de Gananciales y no la del Sr. Velázquez Sánchez y MRMC. Empero, el 1 de junio de 2021, luego de que el Sr. Pirasteh y compañía comunicaran su intención de desistir de la intervención, el foro inferior autorizó el desistimiento y liberó a estos de su participación en el pleito.[48] Mientras tanto, en el TJ2019CV00041, los apelantes reclamaron al Sr. Velázquez Sánchez; a MRMC; al Sr. Pirasteh y su esposa; a Resource Recycling; y a la Sra. Gronau Santiago y su esposo. Contra ellos, promovieron las siguientes causas de acción: (1) sentencia declaratoria, (2) incumplimiento de contrato; (3) conspiración para defraudar, fraude y engaño, conflicto de intereses y violación al deber de fiducia y lealtad; (4) cobro de dinero, enriquecimiento injusto, y daños y perjuicios; y (5) fraude de acreedores. Previo a la desestimación *motu proprio* impugnada en este recurso, el caso tenía señalada una *Vista y Adjudicación* para el 17 de marzo de 2020, la cual no se llevó a cabo por la pandemia del COVID-19. En su *Sentencia*, el TPI estimó innecesaria la celebración de dicha vista por entender que la controversia estaba madura para ser resuelta. Lógicamente, las alegaciones

---

[47] SUMAC, GB2019CV0087, Entrada Núm. 60.
[48] Ver *Resolución* del TPI de 1 de junio de 2021 en el GB2019CV0087, SUMAC, GB2019CV0087, Entrada Núm. 104.

de este pleito contra las referidas partes no están comprendidas en el caso que los apelantes llevan exclusivamente en contra de la Sra. Gronau Santiago en la Sala de San Juan.

Visto así, resulta evidente que ambos pleitos presentan materias distintas, contra partes diferentes, en instancias incompatibles y, por tal razón, no procedía la consolidación. Más aún, estuvo errado el TPI en su juicio de que la desestimación era la mejor herramienta para proteger la sana administración de los tribunales y evitar la bifurcación de casos.

En segundo lugar, rechazada la consolidación por la Sala de San Juan – el foro competente para evaluar la solicitud – la acción correcta por el foro *a quo* no era desestimar la acción. En cambio, lo indicado era ver el caso en sus méritos. Por un lado, el TPI le debía dar la merecida deferencia a la decisión de la otra Sala respecto a la consolidación. Por el otro, erradamente, el TPI no basó su drástico dictamen en disposición doctrinal o de las Reglas de Procedimiento Civil, sino que derivó su razonamiento de la intención de proteger la sana administración de la justicia. A juicio de esta Curia, el foro inferior abusó de su discreción al desestimar el caso sin que alguna de las partes lo solicitara y por motivos equivocados en Derecho.

En tercer lugar, no deben ser pasados por alto los evidentes efectos nocivos de la desestimación de este pleito. Lejos de promover la sana administración de la justicia, como pretendió el foro *a quo* en su *Sentencia*, la inflexibilidad demostrada por el juzgador privó a las partes de su día en corte y de ejercer su derecho a ser oídos. En esencia, la determinación desestimatoria

impidió tanto que PTE y el Sr. Rodríguez Sánchez como el Sr. Pirasteh y el Sr. Velázquez Sánchez promovieran las recíprocas reclamaciones que realizaron en la *Demanda* y en la *Reconvención*. Aún más preocupante, la desestimación no ocurrió tras la petición de alguna de las partes, sino por motivación propia del Tribunal cuando, por el contrario, las partes estaban preparadas para continuar ventilando sus respectivas reclamaciones.

Por último, cónsono con lo anterior, la desestimación de la *Reconvención* también resulta prematura e improcedente. Si bien los apelados reconvinieron bajo la causa de incumplimiento con el Acuerdo de Transacción entre las partes, acogido en la *Sentencia* del TPI en el CA2018CV02635, esta reclamación no significó una petición de alterar, relitigar o retirar dicho dictamen. Por el contrario, estas imputaciones de los apelados en contra de PTE y el Sr. Rodríguez Sánchez constituyeron el cumplimiento de estos con la Regla 11.1 de Procedimiento Civil, la cual los obligó a alegar cualquier reclamación que tuvieran en contra de los apelantes que surgiera de los hechos que motivaron la *Demanda*.

Por todo lo anterior, procede la revocación de la *Sentencia* apelada y, por consiguiente, la continuación del procedimiento.

**-IV-**

Conforme a los fundamentos antes expuestos, se *revoca* la *Sentencia* apelada. Se *devuelve* el pleito para la continuación de los procesos en conformidad con el dictamen de esta Curia.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.